434 July 24, 2014 No. 55

## IN THE OREGON TAX COURT
## REGULAR DIVISION

### ROSALIE RIDGE LLC,
*Plaintiff,*

*v.*

### DEPARTMENT OF REVENUE,
*Defendant*,

*and*

### MULTNOMAH COUNTY ASSESSOR,
*Defendant-Intervenor.*

(TC 5152)

Plaintiff (taxpayer) appealed from a Magistrate Division decision as to forestland special assessment. Taxpayer argued that Defendant-Intervenor Multnomah County Assessor (the county) improperly disqualified real property owned by taxpayer from Western Oregon Forestland Special Assessment for the tax year 2011-12. The county argued that the objective circumstances showed that in the tax year at issue taxpayer did not predominantly hold the subject property for use as "forestland" as defined by ORS 321.257. Following trial, the court found that determining taxpayer's predominant purpose for holding the subject property required determining its sole member's purpose for having taxpayer hold the subject property. The court further found that as described in taxpayer's own governing documents, its primary purpose was to "own, lease and otherwise deal in real estate" and that such purpose reasonably encompassed holding real property planted with marketable trees for future timber harvest and as such was consistent with holding the subject property predominantly for forestry, therefore the subject property was properly held as forestland under the statute.

Trial was held on April 9, 2013, in the courtroom of the Oregon Tax Court, Salem.

John M. Junkin, Garvey Schubert Barer PC, Portland, argued the cause for Plaintiff (taxpayer).

Lindsay M. Kandra, Multnomah County Counsel, Portland, argued the cause for Defendant-Intervenor Multnomah County Assessor (the county).

Vanessa A. McDonald, Assistant Attorney General, Department of Justice, Salem, filed an Answer but did not appear at trial for Defendant Department of Revenue (the department).

Decision rendered for Plaintiff on July 24, 2014.

## HENRY C. BREITHAUPT, Judge.

### I.   INTRODUCTION

This case comes before the court for decision following a trial in the Regular Division. Plaintiff Rosalie Ridge LLC (taxpayer) claims that Defendant-Intervenor Multnomah County Assessor (the county) improperly disqualified real property owned by taxpayer from Western Oregon Forestland Special Assessment for the tax year 2011-12. The county argues that the objective circumstances show that in the 2011-12 tax year taxpayer did not predominantly hold the subject property for use as "forestland," as defined by ORS 321.257.

### II.   FACTS

The historical facts of this case are uncontested. Taxpayer owns real property in Multnomah County identified in the county's records as Account No. R324603 (the subject property). Lillian Logan, until recently the sole member of taxpayer, acquired the subject property in 1977. At trial Lillian Logan testified that she bought the subject property and held it for its value as timber land. From 1984 through June of 2011, the county assessed the subject property as "forestland" under the Western Oregon Forestland Special Assessment program, described at ORS 321.257 to 321.390.

In 2005 Lillian Logan created taxpayer and became its sole member. Lillian Logan contributed the subject property to taxpayer, and the subject property was and remains taxpayer's sole asset. Taxpayer's organizing documents state that the purpose of taxpayer is "to own, lease, and otherwise deal in real estate," but further states that taxpayer may "engage in any lawful business permitted by [The Oregon Limited Liability Company Act]" or the laws of any jurisdiction that taxpayer does business in. At trial taxpayer and her husband, Daniel Logan, testified that she organized taxpayer primarily for limited liability and estate planning purposes.

Daniel Logan and Lillian Logan married in 1990. Daniel Logan is a professional forester and tree farmer with tree farming and forestry operations in the vicinity of the

city of North Plains in Washington County. Daniel Logan first became aware of Lillian Logan's ownership of the subject property in the early 1990s and investigated the prospects for commercially logging the subject property. Daniel Logan abandoned the project for some time in the belief that the City of Portland would not approve the logging operation. Daniel and Lillian Logan subsequently learned that the subject property was outside of the city limits of Portland and resumed preparations to log the subject property. After receiving the appropriate permits, the Logans contracted with a logging company to clear cut the subject property. Logging operations on the subject property began in February of 2001 and concluded in November of 2001. Sometime after the conclusion of the logging operations, but before July 1, 2011, the City of Portland annexed the subject property.

After clear cutting the subject property, Daniel Logan replanted the subject property pursuant to his understanding of the Oregon Forest Practices Act. Daniel Logan testified that in replanting the subject property he significantly exceeded the minimum per acre replanting requirements of the Forest Practices Act. Daniel Logan and another professional forester, Ken Everett, both testified that this was in keeping with sound forestry practices because it would allow Daniel Logan to thin the subject property over time to promote the growth of the most commercially desirable specimens without falling below the statutory minimums. Daniel Logan has also treated the subject property with herbicide to eliminate plants that would otherwise compete with and hinder the growth of commercially valuable timber.

In 2006 Lillian Logan, as sole member of taxpayer, entered into a purchase and sale agreement with a real estate development company to sell the subject property and an adjacent parcel for development as a residential subdivision. The real estate development company sought and received preliminary subdivision plat approval from the City of Portland, but never began development and never received final plat approval. The purchase and sale agreement between Lillian Logan and the real estate development company terminated and Lillian Logan testified that she abandoned her plans to sell the subject property. The

preliminary plat had not yet expired at the time of trial, however, because the City of Portland, on its own initiative, extended the life of the preliminary plat approval.

Following annexation, the City of Portland zoned the subject property "Residential 10,000" (R 10) with "Environmental Protection" (P) and "Environmental Conservation" (C) zoning overlays. Some time before June of 2011, but still several years after these zoning decisions by the City of Portland, the county concluded that the R 10 zoning and environmental overlays were inconsistent with taxpayer continuing to hold the subject property as "forestland" for purposes of Western Oregon Forestland Special Assessment. The county disqualified the subject property from special assessment and taxpayer appealed that disqualification to the Magistrate Division. The magistrate found for the county and taxpayer now appeals to the Regular Division from the decision of the magistrate.

## III.   ISSUE

Whether taxpayer's predominant purpose in holding the subject property was for use as "forestland."

## IV.   ANALYSIS

Given the historical significance of the timber industry in this state, it comes as no surprise that the legislature has provided for special assessment programs for taxing forestlands in western Oregon and eastern Oregon. For purposes of the Western Oregon Forestland Special Assessment program, "forestland" is defined as:

> "[L]and in western Oregon that is being held or used for the predominant purpose of growing and harvesting trees of a marketable species and has been designated as forestland or land in western Oregon, the highest and best use of which is the growing and harvesting of such trees."

ORS 321.257.[1] The statute provides two ways for land in western Oregon to qualify as forestland for purposes of special assessment: (a) the land can be actually used for growing and harvesting marketable timber and be designated as forestland; or (b) the land can have growing and

---

[1] The court's references to the Oregon Revised Statutes (ORS) are to 2011.

harvesting marketable timber as its highest and best use. The parties have not presented arguments concerning the question of highest and best use, so this Opinion will focus on option (a).

There is no dispute that the trees on the subject property are of a type commonly grown for commercial harvest, and that the county designated the subject property as forestland prior to the beginning of the 2011-12 tax year. Therefore, the quoted statutory text calls for the court to determine taxpayer's "predominant purpose" in holding the subject property during the months leading up to the beginning of the 2011-12 tax year.[2] This is a highly subjective question of fact that the court must answer by reference to the objective circumstances. *Hudspeth v. Dept. of Rev.*, 4 OTR 296, 298 (1971). As in all cases before the tax court, the party seeking affirmative relief—in this case, taxpayer— must prove fact questions by a preponderance of the evidence. ORS 305.427.

The first question the court must deal with is a conceptual one. The county rightly asserts that the issue in this case is what taxpayer's predominant purpose was in holding the subject property during the lead-up to the 2011-12 tax year. But in order to establish this predominant purpose, the county relies almost exclusively on the period following the transfer of the subject property from Lillian Logan to taxpayer. The record for that period consists almost entirely of evidence concerning the organization of taxpayer and the failure of the anticipated sale of the subject property to a development company, followed by several years without any apparent activity on the subject property. The county treats the history of the subject property prior to Lillian Logan's transfer of the subject property to taxpayer as generally, if not entirely, irrelevant.

---

[2] ORS 321.359(1)(b)(C) calls for the assessor to disqualify property from forestland special assessment when the assessor discovers that such land is no longer being used as forestland. The parties agree that the assessor disqualified the subject property as a result of such discovery, but do not indicate when the discovery took place. For purposes of this Opinion, the court will assume that such discovery happened, if it happened at all, in the weeks leading up to the beginning of the 2011-12 tax year.

The county's position is rooted in the entirely correct notion that taxpayer, as an Oregon LLC, is a business entity with its own separate legal existence under Oregon law. The county's approach, however, is nonetheless misguided. ORS 63.810 states, in pertinent part:

> "For purposes of *** ORS chapter{] *** 321, *** a limited liability company formed under this chapter or qualified to do business in this state as a foreign limited liability company shall be classified in the same manner as it is classified for federal income tax purposes."

Taxpayer was organized as a "pass-through" entity under the federal Internal Revenue Service's "check-the-box" regulations during the tax year at issue. For federal income tax purposes, that means that taxpayer was a "disregarded entity" with no existence separate from that of its sole owner, Lillian Logan. Treas Reg § 301.7701-2(a); *see also* William S. McKee, William F. Nelson, and Robert L. Whitmire, 1 *Federal Taxation of Partnerships and Partners* ¶¶ 2.02, 3.06 (4th ed 2007) (discussing federal tax treatment of LLCs and other business entities organized under state law). In light of ORS 63.810, the court takes the same approach in applying the "predominant purpose" provisions of ORS 321.257. That is to say, that despite taxpayer's separate legal existence under Oregon law, the court considers the predominant purpose of taxpayer for holding the subject property coextensive with Lillian Logan's predominant purpose—as sole member of taxpayer—for causing taxpayer to hold the subject property.

However, the county does have a point in that events occurring closer in time to the beginning of the 2011-12 tax year are likely to be more probative of Lillian Logan's intentions toward the subject property at the time of disqualification than events occurring at greater remove. The evidence is nearly incontrovertible that at or near the time of Lillian Logan's transfer of the subject property to taxpayer, Lillian Logan intended to sell the subject property to a real estate developer. This case, however, turns on whether the record shows that Lillian Logan's predominant purpose was to hold the subject property as forestland during lead-up to the 2011-12 tax year.

The record on that question is mixed. At trial the county devoted substantial attention to the zoning and overlays on the subject property, but in the end agreed (a) that nothing on the face of the relevant provisions of the Portland City Code (PCC) outright forbade future timber harvests on the subject property; and (b) that the county lacked sufficient knowledge to say whether the City of Portland would permit taxpayer to harvest timber on the subject property at some future time. Taxpayer, in turn, refers to provisions in the PCC permitting the continuance of agricultural activities that were ongoing at the time of an annexation or change in zoning and argues that such provisions would permit taxpayer to continue forestry operations on the subject property. Inasmuch as neither the county nor taxpayer ultimately asserts that this case turns on interpreting the PCC zoning provisions, however, the court will not dwell any further on that subject.

As was discussed above, the record very clearly shows that at some point at or around the time Lillian Logan transferred the subject property to taxpayer, Lillian Logan intended to sell the subject property to a real estate developer. To that end taxpayer entered into a purchase and sale agreement with a real estate development company. That deal ultimately fell apart, but the fact that Lillian Logan, as taxpayer's sole member, entered into the agreement at all is evidence of her predominant purpose for the subject property at that time.

The record pertaining to Lillian Logan's predominant purpose for the subject property after the termination of the purchase and sale agreement with the development company is less clear. The court heard testimony at trial from Daniel Logan and from Ken Everett, another witness qualified as an expert in forestry. Their combined testimony made clear that Daniel Logan's management of the subject property from 2001 onward never departed from the normal practices followed by professional foresters seeking to maximize profits from the commercial harvest of timber.

This testimony cuts both ways. On the one hand, the fact that the subject property remained suitably prepared for eventual commercial harvest after the collapse of taxpayer's

anticipated sale supports a conclusion that taxpayer would resume holding the subject property for eventual timber harvest. On the other hand, however, this also tends to show that the mere presence of marketable trees growing on the subject property does not perfectly indicate Lillian Logan's predominant purpose for the subject property at any given time between 2001 and the date of disqualification.

The problem appears to arise from the long time spans inherent to commercial forestry. The two forestry experts both testified that it might be 40 to 80 years before the next full scale commercial harvest of the subject property. Both witnesses further testified that the subject property would not require pre-commercial thinning or any other overt forestry activity for several years following the date of the trial in this case. In a sense, the best evidence offered by taxpayer to the effect that taxpayer's predominant purpose for holding the subject property during the lead-up to the 2011-12 tax year was for future timber harvest is the absence of any activity inconsistent with that purpose, such as seeking out another real estate developer to buy the subject property.

At the margins, at least, the court agrees that given the work already conducted by Daniel Logan to prepare the subject property for eventual harvest, the absence of activities hinting at a purpose other than forestland use in the years after taxpayer's deal failed in 2007 helps taxpayer's case.

The county likewise relies in large part on the absence of activity on the subject property after the failure of the planned sales agreement to show that taxpayer's predominant purpose for holding the subject property in the lead-up to the 2011-12 tax year was to sell the subject property to a real estate developer. As with taxpayer's approach, the approach of the county is not without problems. In this case the county, with the agreement of opposing counsel, placed exhibits in the record but did not provide testimony from any witnesses to contradict the testimony of taxpayer's witnesses.

ORS 305.427 requires the party seeking affirmative relief on a claim to prove their case by a preponderance of the evidence. Consequently, the party not seeking

affirmative relief—in this case, the county—may sometimes prevail without presenting any evidence to support that party's own position.

However, this is not without risks as a tactical approach. By declining to put on witnesses, the county let pass a significant opportunity to direct the court to any other at-least-equally-likely predominant purpose for the subject property. Instead, the county must rely on the evidence in the record to make such alternative purpose apparent, or hope to wholly undermine taxpayer's position through cross examination, and thus bring the record on that dispositive factual question back into equipoise.

The record on that question after trial is not, however, in equipoise. The court has no reason to doubt the credibility of the witnesses who testified at trial regarding forestry practices and the conditions present on the subject property. As stated above, the evidence is sparse and somewhat ambiguous, but nonetheless generally consistent with holding the subject property as forestland during the lead-up to the 2011-12 tax year.

The county relies in part on statements contained in taxpayer's organizing documents to the effect that the primary purpose of taxpayer is to "own, lease and otherwise deal in real estate." The county's view appears to be that this is highly probative, if not dispositive, of the question of taxpayer's predominant purpose for holding the subject property during the 2011-12 tax year. The court disagrees for several reasons. First, the statement referred to by the county is consistent with holding the subject property predominantly for forestry. A purpose to "own *** real estate" reasonably encompasses holding real property planted with marketable trees for future timber harvest.

Second, the statement referenced by the county is immediately followed in the same document by:

> "The Company may also engage in any lawful business permitted by the [Oregon LLC Act] or the laws of any jurisdiction in which the Company may do business."

Thus, even if the statement referenced by the county is dispositive of the purpose that taxpayer as an entity was

organized to fulfill, it in no way disposes of taxpayer's predominant purpose for owning a particular parcel of real property.

Finally, for the reasons discussed above, the court has concluded that determining taxpayer's predominant purpose for holding the subject property requires determining Lillian Logan's purpose for having taxpayer hold the subject property. The court makes this determination by reference to objective indications. *Hudspeth*, 4 OTR at 298. The statement referenced by the county is one such objective indication, but—as was discussed above—the county seeks to impose an interpretation on that statement that the text itself does not support. Both as quoted by the county and—particularly—when read in context, the quoted statement is consistent with holding the subject property as forestland.

## V.  CONCLUSION

Taxpayer has satisfied the burden of proving by the preponderance of the evidence that the subject property was "forestland" for purposes of Western Oregon Forestland Special Assessment during the 2011-12 tax year. Now, therefore,

IT IS THE DECISION OF THIS COURT that the subject property was "forestland" for the purposes of Western Oregon Forestland Special Assessment during the 2011-12 tax year.