444 July 24, 2014 No. 56

IN THE OREGON TAX COURT
REGULAR DIVISION

Joseph W. ANGEL,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE
and Multnomah County Assessor,
*Defendants.*

(TC 5126)

Plaintiff (taxpayer) appealed from a Magistrate Division decision as to the disqualification of his real property from forestland special assessment. Defendant Multnomah County Assessor (the county) argued that taxpayer's abandoned Measure 37 claim and development plans showed that his predominant purpose for holding the subject property in the 2011-12 tax year was for some purpose other than harvesting marketable timber and that taxpayer could not hold the subject property predominantly for timber harvest because the subject property was within the City of Portland's "Environmental Conservation" (C) overlay zone. Following trial, the court found that for the time period at issue, because taxpayer had abandoned the Measure 37 claim and development plans nearly three years prior to the start of the 2011-12 tax year, taxpayer's conduct regarding the subject property was consistent with a predominant purpose of harvesting the marketable timber growing on the subject property and that taxpayer's conduct toward the subject property during the time immediately leading up the county's issuance of the notice of disqualification for the subject property was more consistent with holding the subject property for future timber harvest than for any other purpose discernible from the record.

Trial was held January 15, 2014, in the Multnomah County Courthouse, Portland.

Erick J. Haynie, Perkins Coie LLP, Portland, argued the cause for Plaintiff (taxpayer).

Lindsay R. Kandra, Multnomah County Counsel, Portland, argued the cause for Defendant Multnomah County Assessor (the county).

Decision for Plaintiff rendered July 24, 2014.

**HENRY C. BREITHAUPT, Judge.**

### I. INTRODUCTION

This case comes for decision following a trial in the Regular Division. Plaintiff (taxpayer) argues that Defendant

Multnomah County Assessor (the county) improperly disqualified certain real property owned by taxpayer from Forestland Special Assessment for the 2011-12 tax year. For the convenience of the court and of the parties, trial was held at the Multnomah County Courthouse in Portland.

## II.  FACTS

The parties to this case reached a partial stipulation of facts prior to trial. The following statement of facts reflects both the stipulations of the parties and the facts established at trial.

Plaintiff Joseph W. Angel (taxpayer) owns certain real property adjacent to Forest Park in Portland. Taxpayer's real property is wholly within the city limits of Portland, but only partially within Urban Growth Boundary (UGB) of the Metro region. The portion of taxpayer's property at issue in this appeal (the subject property) is outside of Portland's UGB. The subject property is zoned "Residential Agriculture" (RF) by the City of Portland and is subject to the city's "Environmental Conservation" (C) overlay.[1]

Taxpayer acquired the subject property in 1977 for use partially as a personal residence and partially as an investment. Taxpayer and the county agree that the subject property entered Forestland Special Assessment some time prior to 1977 and remained in Forestland Special Assessment through the 2010-11 tax year. Some time prior to 1977 the previous owner of the subject property partially logged the subject property and caused the logged area to be replanted with saplings. At or about the time of the disqualification at issue in this case the trees on the subject property were a mix of approximately 90 percent Douglas fir and 10 percent alder trees.

Taxpayer and his family lived in a house on the subject property for a number of years before moving to another residence with better access to schools and other amenities. Taxpayer retained ownership of the subject property and rented out the house on the property.

---

[1] The Notice of Disqualification wrongly states that the subject property was also subject to the City of Portland's "Environmental Protection" (P) overlay. The parties have stipulated that this statement was mistaken.

Over the years, taxpayer has taken various steps to secure the subject property against trespass and vandalism—particularly damage to, or theft of, trees. At the time of taxpayer's purchase of the subject property, a manned ranger station near the entrance to Forest Park deterred intrusions onto the subject property. The City of Portland subsequently withdrew the staffing for the ranger station and tore down the station itself, which caused the loss of that deterrent effect. Over the years taxpayer has posted "no trespass" signs in the timbered portions of his property and has personally seen off trespassers. Taxpayer has also caused the City of Portland to place a gate near the road access to the subject property to prevent motor vehicle access (while still allowing pedestrian and bicycle access), thus deterring theft of trees for firewood.

In 2006 taxpayer initiated a claim under the then-recently passed Measure 37 seeking compensation for loss of fair market value of the subject property arising from the City of Portland's zoning and land use regulations. However, taxpayer did not pursue this claim and the City of Portland closed taxpayer's Measure 37 claim on June 20, 2008.

Also in 2006 or 2007, taxpayer met with officials of the City of Portland concerning development possibilities for the subject property. As a result of these meetings the City of Portland produced a document titled "Pre-Application Conference Summary Report" detailing the land use changes and other steps necessary to secure approval for a residential development on the subject property. As with the Measure 37 claim, taxpayer did not take any further steps toward developing the subject property following those initial meetings. Taxpayer has not engaged in any new construction activity on the subject property since taxpayer's purchase of the subject property in 1977.

Taxpayer has engaged in little active management of the timbered areas of the subject property. Taxpayer has informally sought management advice from social acquaintances involved in the timber industry. Taxpayer has also monitored the undergrowth in the timbered areas for signs of undesirable plant growth but, not having found any such growth, has not taken any measures to remove or suppress

noxious or invasive plant life. As was noted above, however, taxpayer has taken active steps to prevent theft or damage to the trees on the subject property by trespassers.

On June 22, 2011, the county issued notices of disqualification from Forestland Special Assessment to taxpayer for the timbered areas of the subject property.[2] The notices specified as the reason for the disqualification that "the land is no longer in qualifying use" on the grounds that restrictions associated with the zoning overlay on the subject property prevented its use as "forestland" for purposes of special assessment.

Taxpayer appealed the notices of disqualification to the Magistrate Division of this court. The magistrate, following oral argument, granted the county's motion for summary judgment. Taxpayer then appealed to the Regular Division. In the Regular Division the county again moved for summary judgment. The court denied that motion after oral argument and scheduled the case for trial. Trial was held on January 15, 2014, at the Multnomah County Courthouse.

### III.   ISSUE

The issue in this case is whether the subject property was "forestland" for purposes of Western Oregon Forestland Special Assessment during the 2011-12 tax year.

### IV.   ANALYSIS

The laws of this state provide for special assessment of forestland for property tax purposes. There are separate sets of statutes for forestland west of the Cascade Range and east of the Cascade Range, but the outlines are broadly similar. For purposes of Oregon west of the Cascade Range, "forestland" is defined as:

"[L]and in western Oregon that is being held or used for the predominant purpose of growing and harvesting trees of a marketable species and has been designated as forestland

---

[2] The subject property consists of three separate tax lots and the assessor issued a separate notice of disqualification for each tax lot. Other than the information identifying the tax lot that was the subject of each notice, the notices of disqualification are substantially identical.

or land in western Oregon, the highest and best use of which is the growing and harvesting of such trees."

ORS 321.257(2).[3] In other words, there are two ways for land in western Oregon to be "forestland" for purposes of special assessment: (a) it can be designated as forestland and held with the predominant use of growing trees for commercial timber harvest; or (b) it can be land with a "highest and best use" of growing trees for commercial harvest. Neither party has presented arguments on the issue of highest and best use, so this Opinion will focus exclusively on route (a).

There is no dispute that the county had previously designated the subject property as forestland and that, on June 22, 2011, the subject property was planted with trees belonging to marketable species. The court must therefore determine whether taxpayer's "predominant purpose" for holding or using the subject property on or about June 22, 2011, was "growing and harvesting trees of a marketable species." ORS 321.257(2).

The notices of disqualification, dated June 22, 2011, each specify that the county had discovered that the subject property was no longer being used as forestland. Neither the notices themselves nor any other evidence in the record specifies a date for this discovery, so in this Opinion the court will focus its attention on taxpayer's predominant purpose for the subject property on or about June 22, 2011.

Taxpayer's "predominant purpose" for holding the subject property is a question of taxpayer's state of mind. As in all such questions, the court cannot rely on taxpayer's testimony alone, as such testimony tends to be self-serving. *Hudspeth v. Dept. of Rev.*, 4 OTR 296, 298 (1971). Instead, the court must determine taxpayer's predominant purpose for holding the subject property by reference to taxpayer's actions and to the objective circumstances as of June 2011. As the plaintiff in this case, taxpayer has the burden of proving his predominant purpose for holding the subject property by a preponderance of the evidence. ORS 305.427.

---

[3] The court's references to the Oregon Revised Statutes (ORS) are to the 2011 edition.

Taxpayer claims that his predominant purpose for holding the subject property on June 22, 2011, was to eventually harvest the marketable timber growing on the subject property. The affirmative evidence of this intention is somewhat sparse, but not surprisingly so. At trial the court heard testimony from a witness qualified as an expert in forestry to the effect that trees of the type growing on the subject property may take many decades—or even as much as a century—to grow to marketable size. While they are growing—particularly given the conditions on the subject property—such trees require little, if any, active management, such as thinning or applying pesticides. In other words, the lack of active management of the timbered portions of the subject property was consistent with professional forestry practices for cultivating trees of that type in that environment for eventual commercial harvest.

The county makes—in essence—two arguments, neither of which is well taken. First, the county argues that taxpayer's abandoned Measure 37 claim and development plans show that his predominant purpose for holding the subject property in the 2011-12 tax year was for some purpose other than harvesting marketable timber.

This is a potentially very good argument for the county's substantive position that fails in this instance primarily due to timing. The question in this case is what taxpayer's predominant purpose for the subject property was on or about June 22, 2011. While taxpayer's Measure 37 claim and preliminary development plans are certainly information that the court must consider in determining taxpayer's predominant purpose for the subject property, the court must also consider that taxpayer appears to have abandoned that claim and those plans nearly three years prior to the start of the 2011-12 tax year. Taxpayer's actions with regard to the subject property between the summer of 2008 and the date of the notice of disqualification were consistent with holding the subject property for purposes of future timber harvest. Because the question is what taxpayer's predominant purpose for holding the subject property was on the date of the notices of disqualification, taxpayer's conduct at or about that time must take precedence over claims for compensation or development plans that taxpayer had

abandoned—both at relatively preliminary stages—several years previous.

The county's second argument fares no better. The county argues that taxpayer cannot hold the subject property predominantly for timber harvest because the subject property is within the City of Portland's "Environmental Conservation" (C) overlay zone. To be perfectly clear, the county's position is not that the C overlay zone legally bars taxpayer from harvesting timber on the subject property; rather, the county argues that the C overlay imposes so many administrative hurdles that taxpayer cannot, as a practical matter, have held the subject property for the predominant purpose of future timber harvest.

This argument fails because the county has presented no evidence to support its position. ORS 305.427 requires the party seeking affirmative relief to prove its case by a preponderance of the evidence. Taxpayer has presented evidence from which the court could reasonably conclude that taxpayer's predominant purpose for holding the subject property was to use it as forestland. Given that evidence, the county must come forward with evidence that at least puts the record on that question into equipoise. The county's sole witness on this issue testified only as to the county's understanding of the City of Portland's zoning overlays. Neither this testimony nor the exhibits placed in the record by the county tends to rebut the evidence placed in the record by taxpayer concerning taxpayer's predominant purpose for the subject property.

The evidence in the record relating to taxpayer's predominant purpose for holding the subject property on or about June 22, 2011, supports a conclusion that, as of the date that the county claims to have discovered otherwise, taxpayer's predominant purpose for holding the subject property was for eventual harvest of the commercially marketable timber growing on the subject property.

## V.   CONCLUSION

Taxpayer's conduct regarding the subject property has been, on the whole, consistent with a predominant purpose of harvesting the marketable timber growing on the

subject property. Moreover, taxpayer's conduct toward the subject property during the time immediately leading up to the county's issuance of the notice of disqualification for the subject property was more consistent with holding the subject property for future timber harvest than for any other purpose discernible from the record. Now, therefore,

IT IS THE DECISION OF THIS COURT that the subject property was forestland for purposes of Forestland Special Assessment during the 2011-12 tax year.