IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

AMARJIT KAUR,                           )
                                        )
            Plaintiff,                   )   TC-MD 180242G
                                        )
      v.                                 )
                                        )
CLACKAMAS COUNTY ASSESSOR,               )
                                        )
            Defendant.                   )   **FINAL DECISION**[1]

      This case is ready for decision after trial.  Plaintiff (taxpayer) appealed Defendant's (the county's) removal of Western Oregon forestland designation from the subject for tax year 2018–19.[2,3]  Although taxpayer's use of the land in prior years had not been consistent with its forestland designation, the evidence showed that at the time relevant to this appeal she intended to replant trees during the next planting season.  Because the subject was being held for the predominant purpose of growing and harvesting marketable trees, taxpayer's appeal is granted.

      Taxpayer was represented at trial by Dale Hult, and the county was represented at trial by Todd Cooper, Appraisal Supervisor.  Three witnesses testified: taxpayer; Kashmir Dhadwal, taxpayer's husband; and Anthony Hunter, Senior Appraiser for the county.  Taxpayer's exhibits 1 and 2 were admitted without objection.  Taxpayer's exhibit 3 was admitted as to the preprinted form, but not as to the information filled out on the form.  Taxpayer's exhibit 4 was admitted as

/ / /

---

[1] Sections I and II of this Final Decision are identical to those sections in the court's Decision, entered December 10, 2018.  Section III addresses taxpayer's subsequently filed cost request and the county's objection.

[2] The subject is property identified as Account 01684243.

[3] The court denied taxpayer's motion to amend her complaint at trial by adding an appeal of the county's denial of the application for forestland designation she made subsequent to the county's disqualification notice. That claim is now moot.

to the photograph of the cone-bearing tree on one side of the sheet of paper. The county's exhibits A to G were admitted without objection.

## I. STATEMENT OF FACTS

The subject is an approximately nine-acre parcel of undeveloped land adjacent to the highway in Brightwood. Several years before 2015, the subject's former owner commercially harvested the timber and replanted with seedlings. The subject remained designated as Western Oregon forestland and was specially assessed accordingly.

In 2015, taxpayer had the subject's trees cleared in a noncommercial logging operation to prepare the site for development as an RV park. The parties agreed that some mature trees were not cleared, but offered conflicting testimony as to how many were left. Mr. Dhadwal testified that either "4 or 5" or "3 or 4" acres remained forested. Mr. Hunter testified that "an acre," "an acre and a half," or "less than two acres" remained forested. Photographs submitted by the county, dated February 2017 and January 2018, showed a cleared expanse of ground with a line of trees in the background. (Ex G at 2–3.) An undated photograph submitted by taxpayer showed a clearing with a single cone-bearing tree in the foreground and additional trees in the background. (Ex 4.)

At the time the trees were cleared, the county sent notice that it had removed the subject's forestland designation for the 2016–17 tax year, and taxpayer appealed. In *Kaur v. Clackamas County Assessor*, TC–MD 160294N, WL 3895756 (Or Tax M Div, Sept 6, 2017) (*Kaur I*), the court held that the county's disqualification notice was defective and reinstated the subject into special assessment.

Meanwhile, taxpayer's land use application was denied, and her plans to develop the subject did not reach fruition. Taxpayer did not replant the subject during the pendency of

*Kaur I*; Mr. Dhadwal testified that he and taxpayer refrained from planting because at that time there was still some possibility that development as an RV park would be allowed.

On September 13, 2017, one week after the court issued its final decision in *Kaur I*, Mr. Hult sent the following email to an appraisal manager for the county: "We received the courts order, what happens now, can they get a refund? *Can they replant their land?*" (Ex F at 5 (original punctuation, emphasis added).) The county's manager responded as follows on the same day:

> "We processed the correction to the roll this week when we received the final judgment. A refund will be forthcoming. Additionally, they will have forest deferral for the 2017/18 tax year since the decision was not issued until after August 15th.
>
> *"Trees will have to be planted and meet stocking requirements by January 1, 2018 in order for the property owner to keep their deferral. * * *.*"

(*Id.*) (Emphasis added.)

On January 4, 2018, Mr. Hunter visited the subject and took the photographs showing treeless land. On February 26, 2018, the county issued its "Notice of Declassification of Special Assessment 2018–2019—Deferred Tax Due." (Ex A at 1.) The first sentence of that notice was as follows: "As required by Oregon Revised Statute 321.367, 8.08 acres of Designated Forestland on the above referenced property has been removed from special assessment for not meeting minimum stocking requirements effective January 1, 2018." (*Id.*) The notice stated that additional tax would appear on the subject's 2018–19 property tax statement. (*Id.*)

Mr. Dhadwal testified that upon receiving the county's notice he immediately purchased seedlings that were planted on the subject in March. Mr. Dhadwal—who owns a tree nursery and cooperated with his wife in managing the subject—testified that the January 1 deadline given by the county in September was unreasonable. He testified that the best time for planting trees is

March or April, when the ground has thawed, rain is still plentiful, nursery inventory is high, and the next winter freeze is far off. He testified that planting trees in early fall was possible, but not optimal, and that planting trees was not possible once temperatures at the subject fall below freezing in late fall.

A forester from the State Forester's office inspected the subject and wrote the following report, dated May 22, 2018:

> "This inspection was done at the request of the Clackamas County Assessor's office for Forest Deferral eligibility. This parcel is 26E26AA 00103 on Hwy 26 that was masticated a couple years ago and then replanted sometime this past spring. I took 10 plots on the 9 acre unit yesterday. I came up with 360 living trees per acre and 80 dead trees per acre. They were planted on about a 10 foot spacing. This will have to be monitored and checked again this coming winter because about two thirds of the 360 living trees have mostly brown needles of existing foliage but the buds are healthy and leafing out. Technically those trees are alive but may not survive through a dry summer. There is also a lot of competition from thistles, blackberries, bracken fern and other herbaceous plants. I recommend control of competing vegetation this coming fall. I can refer you to a forestry consultant to assist you with achieving at least 200 free to grow trees per acre to qualify for Forest Deferral."

(Ex 2.) That forester had previously sent emails to the county indicating the subject did not qualify for forestland special assessment because it did not meet minimum stocking requirements. (Exs C, D.) The forester's emails were dated October 2016 and March 2017. (*Id*.)

Taxpayer asks the court to order the subject to remain in forestland special assessment for tax year 2018–19. The county asks the court to uphold its removal of forestland designation.

## II. ANALYSIS

The issue in this case is whether the subject qualified for Western Oregon forestland special assessment at the relevant time.

/ / /

Property meeting statutory definitions of *forestland* qualifies for special assessment under the tax laws of Oregon, with separate statutes applying to forestland east and west of the Cascade Range. *See* ORS 321.257 to 321.390 (western Oregon); 321.805 to 321.855 (eastern Oregon); *Angel v. Dept. of Rev.*, 21 OTR 444, 447 (2014).[4] Once land receives forestland designation, it remains in special assessment until the assessor removes the designation as authorized by statute. ORS 321.359(1)(a).

Assessors are authorized to remove forestland designation by two statutes relevant here. First, ORS 321.359(1) requires assessors to remove a forestland designation if any of four listed events occur. The only one of those events pertinent here is the following: "Discovery by the assessor that the land is no longer forestland[.]" ORS 321.359(1)(b)(C). Second, ORS 321.367(4) requires assessors to cease treating land as forestland "upon receipt of * * * notice from the State Forester" that the land is not being properly managed.

Here, the county's notice explicitly relied on the second statute: "As required by Oregon Revised Statute 321.367, 8.08 acres of Designated Forestland on the above referenced property has been removed from special assessment for not meeting minimum stocking requirements effective January 1, 2018." The court's analysis therefore begins with ORS 321.367.

A.      *ORS 321.367*

ORS 321.367 establishes a process by which the State Forester evaluates the management of designated forestlands that are inadequately stocked with trees. The State Forester is required to "identify all of the forestlands that fail to meet the minimum stocking" and are therefore underproductive. ORS 321.367(1). Where the State Forester has reason to believe forestland is not being properly managed, "the State Forester shall review the owner's management plan, if

---

[4] The court's references to the Oregon Revised Statutes are to 2017,

any, and inspect the property." ORS 321.367(2). If the State Forester determines a proper management plan is not being followed, the State Forester shall advise the owner that a plan "must be developed and activated within one year after the date of the advisement." ORS 321.367(3)(a). After the deadline set in the advisement, the State Forester shall again view the land to determine whether it is being properly managed. ORS 321.367(3)(c). If not, then the State Forester shall give notice to the owner and the assessor that the land is not being managed as forestland. *Id.* Only then does the assessor remove the property's forestland designation. ORS 321.367(4).

Thus, failure to meet minimum stocking requirements is not by itself an adequate reason for disqualifying land from forestland special assessment under ORS 321.367. Lands failing to meet minimum stocking requirements may still be "forestlands." ORS 321.367(1). Such lands are tracked by the State Forester, who conducts a process of inspection, advisement, and reinspection that allows owners at least a year to develop and activate forestland management plans before a determination about their management practices is made and county assessors are notified.

In this case, it is doubtful whether the emails sent by the State Forester to the assessor in October 2016 and March 2017 were notices requiring disqualification under ORS 321.367(4). Neither email stated a conclusion about whether the subject was being managed in accordance with a qualifying plan. *Cf.* ORS 321.367(3). Neither email stated whether the forester had inspected the subject or whether a one-year advisement period had been given in which to implement a new management plan. Given the emails' absence of reference to ORS 321.367 processes, they do not appear to be notices under ORS 321.367. Instead, they appear to be advice to aid the county in discovering for itself that the subject was no longer forestland. Under

ORS 321.359(1)(b)(C), discussed below, upon making such a discovery the county might have disqualified the subject without the one-year advisement period required before the State Forester could give the notice required for disqualification under ORS 321.367(4).

Whatever the State Forester's intent in sending the emails, it is clear is that the county did not disqualify the subject for the 2018–19 tax year because of those emails. ORS 321.367(4) requires assessors to cease treating land as forestland "upon receipt" of the State Forester's notice. Here, approximately six months after the later of the two emails was sent, the county informed taxpayer that the subject could remain in special assessment if trees were planted by January 1, 2018.[5] By making the subject's disqualification contingent on planting trees, the county showed that its disqualification was not based on prior notice from the State Forester. The evidence shows instead that the county disqualified the subject based on its own inspection on January 4, 2018. Authority for the disqualification is therefore not found in ORS 321.367(4).[6]

Taxpayer did not challenge the sufficiency of the reason stated in the county's notice, and both parties presented evidence on the issue of whether the subject was forestland. The court will proceed to analyze the question of whether the subject was disqualified under ORS 321.359(1).

B.      *ORS 321.359(1)*

Forestland designation must be removed upon "[d]iscovery by the assessor that the land is no longer forestland[.]" ORS 321.359(1)(b)(C). In western Oregon,

/ / /

/ / /

---

[5] The assessor did not identify its authority for setting that date as a deadline for replanting.

[6] Regulations setting standards for forestland management are cited in the forester's emails. A taxpayer's failure to comply with those regulations is not sufficient for disqualification under ORS 321.367(4) of land already designated as forestland without notice from the State Forester to the county assessor.

" '[f]orestland' means [1] land in western Oregon that is being held or used for the predominant purpose of growing and harvesting trees of a marketable species and has been designated as forestland or [2] land in western Oregon, the highest and best use of which is the growing and harvesting of such trees."

ORS 321.257(2). The parties have presented no argument or evidence on the highest and best use of the subject, and they agree that the subject was designated as forestland before the county's disqualification notice. Therefore, the subject was forestland if it was "held or used for the predominant purpose of growing and harvesting trees of a marketable species."

A taxpayer's predominant purpose in holding land is "a highly subjective question of fact that the court must answer by reference to the objective circumstances." *Rosalie Ridge LLC v. Dept. of Rev.*, 21 OTR 434, 438 (2014). While the current use of land is a relevant circumstance, it is not controlling because "[i]t is possible for land with no current use or with another current use to be held for future forest use and qualify as forestland." *Prahar v. Dept. of Rev.*, 13 OTR 232, 234–35 (1995); *see also Sanok v. Grimes*, 294 Or 684, 698, 662 P2d 693 (1983) (stating eligibility for forestland designation depends on actual "or planned" use of land for growing marketable trees). Furthermore, a taxpayer's predominant purpose for holding land may change over time. *See Rosalie Ridge*, 21 OTR at 439 (finding predominant purpose of growing and harvesting trees despite "nearly incontrovertible" evidence that purpose in prior years was sale for development).

The relevant date for determining predominant purpose is probably the date on which an assessor alleges to have discovered that land is no longer forestland. *See Angel*, 21 OTR at 448. However, where "[n]either the notices themselves nor any other evidence in the record specifies a date for this discovery," the court evaluates predominant purpose as of the notice date. *Id.* In many cases, like this one, the distinction between the two dates will be unimportant because no evidence indicates the taxpayer's purpose changed during the interval.

Here, the county's date of discovery was January 4, 2018. The other possible discovery dates suggested by the evidence are October 2016 and March 2017, the dates of the State Forester's emails to the county. However, the subject's qualification for forestland designation was still an open question for the county on September 13, 2017, when its email stated the subject could continue in special assessment if it was replanted. The stated reason for the eventual disqualification was that the subject did not meet stocking requirements. The county's appraiser made that determination when he visited the subject on January 4, 2018.

There is no dispute that taxpayer intended to develop the subject in 2015, when she razed some portion of the trees on the land. Mr. Dhadwal testified that he and taxpayer did not replant during the pendency of the *Kaur I* case because they still hoped to be able to develop the subject as an RV park.

Purposes may change, however, and there is evidence that taxpayer's did. Immediately after the conclusion of *Kaur I* in September 2017, taxpayer's representative inquired about replanting trees. Given the failure of taxpayer's development plans and the court's explanation of the law in *Kaur I*, it is plausible that taxpayer would determine to again grow trees on the subject for harvest and sale.

Although the county presented evidence that the subject lacked trees on January 4, 2018, it did not controvert Mr. Dhadwal's credible testimony that the months between September and January were not optimal for tree planting. Likewise, the county did not put on evidence contravening Mr. Dhadwal's testimony that the best time for planting trees on the subject was March or April.

Taxpayer's rapid planting of the subject after receiving the county's notice of February 2018 might indicate that her purpose changed when confronted with an additional tax

assessment. However, that planting is also consistent with Mr. Dhadwal's testimony that they desired to replant when the weather permitted. Taxpayer's delay in replanting is inconclusive because the county issued its notice before the planting season was over. A taxpayer's failure to replant by the end of planting season would carry more weight. Quite the contrary was found, however; the State Forester determined the subject met minimum stocking requirements in May 2018. It is not disputed that the trees planted were of a marketable species.

The county apparently considered itself bound to inspect the subject and determine its forestland status based on its quantity of trees on January 1.[7] However, qualification as forestland does not depend on number of trees *per se*, but on the predominant purpose for which the land is held or used. ORS 321.257(2); *Prahar*, 13 OTR at 234–35. Counting trees in January is of limited value in showing whether there is a purpose to replant at the next available opportunity. Perhaps it is for that reason that assessors have until June 30 to remove a forestland designation from the tax roll, and that a timely notice sent thereafter causes the disqualification to relate back to January 1. ORS 321.366; OAR 150-308-1530.

The subject should have been disqualified in a previous year. However, previous years are not at issue, and taxpayer was not bound to continue in the course she followed in those years. Although the evidence is limited, that is not unusual in forestland special assessment cases given the slow pace and long periods of inactivity associated with growing trees. *Rosalie Ridge*, 21 OTR at 441. What evidence there is shows that taxpayer changed her mind within a

///

---

[7] It is not clear by what authority the county considered itself obliged. The county may have mistakenly relied on Oregon Administrative Rule (OAR) 150-321-0340(3)(d), which states that "[a]t least 20 percent, but not less than two acres, of the area in the plan must be planted by December 31 of the first assessment year that the land is designated as forestland." By its terms, that regulation applies to newly designated forestland. Here, the subject had been designated forestland for many years.

week after receiving the court's decision in *Kaur I.* Waiting for favorable weather to replant was consistent with her new purpose of growing and harvesting marketable trees.

### III. COST REQUEST

Taxpayer filed a request for costs and disbursements pursuant to Tax Court Rule – Magistrate Division (TCR–MD) 16 C in which she reported incurring fees totaling $9,067.50, representing 46.5 hours of Mr. Hult's time at an hourly rate of $195. A parenthetical noted that the amount "includes research, preparation, travel, mileage, fees, and copies." No itemization or additional proof was provided. The county objected on several grounds.

"Costs, like attorney fees, are not recoverable in the absence of a statute or contractual provision authorizing the award." *Compton v. Weyerhaeuser*, 302 Or 366, 367, 730 P2d 540, 540 (1986). Magistrates' authority to award costs and disbursements is found in ORS 305.490(2). *Wihtol I v. Dept. of Rev.*, 21 OTR 260, 267–68 (2013). By definition, such costs and disbursements do not include expenses for legal services. TCR–MD 16 A.[8] Nor do they include expenses for experts, which are allowable "in addition to costs and disbursements" in Regular Division proceedings. ORS 305.490(4)(a).

Here, taxpayer neither itemized any recoverable costs nor attached appropriate proof. *See* TCR–MD 16 C(1). Mr. Hult's fees are either for legal services or expert services, neither of which is recoverable as costs and disbursements.

### IV. CONCLUSION

The subject's disqualification was not due to a notice received from the State Forester, and, beginning in September 2017, the subject was held for the predominant purpose of growing and harvesting trees of a marketable species. Now, therefore,

---

[8] Tax Court Rules – Magistrate Division (TCR–MD)

IT IS THE DECISION OF THIS COURT that the subject qualified for forestland special assessment at the time relevant to the county's notice for tax year 2018–19.  Taxpayer's appeal is granted.  The parties will bear their own costs.

Dated this ____ day of January, 2019.


_____
POUL F. LUNDGREN
MAGISTRATE

***If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.***

***Your complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed.  TCR-MD 19 B.***

***This document was signed by Magistrate Poul F. Lundgren and entered on January 18, 2019.***