IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

| | | |
|---|---|---|
| PAUL S. DOBSON, | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 180295G |
| | ) | |
| v. | ) | |
| | ) | |
| JOSEPHINE COUNTY ASSESSOR, | ) | |
| | ) | |
| Defendant. | ) | **FINAL DECISION**[1] |

This is one of two forestland special assessment disqualification cases tried simultaneously.[2] The two cases were brought respectively by two brothers (Plaintiffs Christopher C. Dobson and Paul S. Dobson, collectively "taxpayers", "the Dobsons", or "the brothers") who each inherited separate designated forestland properties in southern Oregon (the subjects) and subsequently received disqualification notices from Defendant (the county). Because the evidence shows that taxpayers held or used the subjects for the predominant purpose of growing marketable species of trees, the court holds that the subjects continue to qualify for forestland special assessment.

Plaintiff Christopher Dobson appeared on behalf of both himself and Plaintiff Paul Dobson, and both brothers testified. Constance Roach, Josephine County Assessor, and Christopher Parton, Chief Deputy Assessor, appeared on behalf of the county, and Ms. Roach testified. Taxpayers' exhibit 1 was admitted without objection. The county's two exhibits A (one for each case) were admitted without objection.

---

[1] This Final Decision incorporates sections I and II of the court's Decision, entered April 8, 2019, without change. Section III is inserted to address taxpayers' Statements for Costs and Disbursements.

[2] The two cases are *Paul S. Dobson vs. Josephine County Assessor*, TC–MD 180295G, and *Christopher C. Dobson vs. Josephine County Assessor*, TC–MD 180296G. The two decisions are identical.

## I. STATEMENT OF FACTS

The subjects are two parcels in southern Oregon that were designated for forestland special assessment at all relevant times preceding the county's disqualification notices. Account R325664, belonging to Christopher Dobson, was 14.30 acres and included a homesite. Account R325666, belonging to Paul Dobson, was 12.22 acres. The Dobsons inherited the subjects from their father in March 2018. Although the Dobsons owned the subjects separately, Christopher Dobson managed both properties.

According to the Dobsons' testimony, they had each lived at the homesite off and on over the years before March 2018, helping their father. With the assistance of the brothers, the two subjects had been selectively logged five to seven years before trial, yielding approximately 14 truckloads of timber per property. Paul Dobson testified that he assisted with falling, bucking, and limbing the timber, and that he has since been employed doing similar work. Christopher Dobson testified that since their father's death they have always intended to follow through with their father's plan of paying off the subjects' mortgages through income generated from a combination of rents and logging.

Christopher Dobson testified that little active forest management had been required lately because the subjects had so recently been logged. He testified to thinning out hardwood stands between the conifers for purposes of obtaining firewood, creating a fire break protecting the conifers, and allowing additional room for the conifers to grow properly. He testified that he had not had the subjects "cruised" by a forester for an estimate of the board feet of timber growing, but that the subjects each currently contained over 500 trees per acre.

In April 2018, taxpayers each received a questionnaire from the county regarding the eligibility of their recently acquired property for forestland special assessment. (Exs A.) The

questionnaires each contained six questions. The first question applied only to owners who acquired property in a sale, and taxpayers each left that question unanswered. The remaining five questions were written to be answered by checking a box "yes" or "no" (or, in one case, "unknown") and did not provide space for explanation. The completed questionnaires contain checked boxes with a few handwritten notes. The questions and taxpayers' answers (with notes) are summarized in the following table.

| Question | Christopher Dobson's Answer | Paul Dobson's Answer |
|---|---|---|
| 2) Do you intend to hold the forestland for the predominant purpose of growing and harvesting marketable timber? (consider the forestland, not the residential portion of your property) | No. | No. |
| 3) Has there been a timber harvest in the past 3–5 years? | No. 6 years ago. | Yes. Selective 5 years ago. |
| 4) If there has been a timber harvest, has re-planting occurred or is there a plan in place to re-plant? | No. Was selective. | No. |
| 5) If there is a dwelling on the parcel, is it used in conjunction with management of the forestland? | No. | No. |
| 6) Is there a deed of conservation easement associated with any portion of the parcel? | No. | No. |

Christopher Dobson testified that he had interpreted Question 2 as asking whether the subjects would be held by a timber company. He testified that he and his brother coordinated their answers, and taxpayers' signatures on the questionnaires bore the same date.

Based on taxpayers' negative answers to Question 2, the county disqualified the subjects from forestland special assessment. Taxpayers now ask the court to reinstate the subjects into special assessment.

/ / /

## II. ANALYSIS

The issue is whether the subjects remained qualified for forestland special assessment. Because appeals to this court are *de novo*, the court is not limited to considering the evidence available to the county when it disqualified the subjects. To obtain relief, taxpayers must bear the burden of proof by a preponderance of the evidence. *See* ORS 305.427.[3]

Once property is designated as forestland, it remains in special assessment until the assessor removes the designation for a legal reason. ORS 321.359(1)(a). The legal reason pertinent to this case is found in ORS 321.359(1)(b)(C): forestland designation must be removed upon "[d]iscovery by the assessor that the land is no longer forestland[.]" Land may qualify as *forestland* under either of two tests. In western Oregon,

> " '[f]orestland' means [1] land in western Oregon that is being held or used for the predominant purpose of growing and harvesting trees of a marketable species and has been designated as forestland or [2] land in western Oregon, the highest and best use of which is the growing and harvesting of such trees."

ORS 321.257(2). Thus, forestland includes both land held or used for a particular subjective purpose and land with a particular highest and best use.

In this case, neither party presented any argument or evidence as to the highest and best use of the subjects, so the court will not consider that issue. Because the subjects were previously designated forestland, they remained forestland if they were "held or used for the predominant purpose of growing and harvesting trees of a marketable species."

A taxpayer's predominant purpose in holding land is "a highly subjective question of fact" to be answered by reference both to "[the] taxpayer's actions and to the objective circumstances" as of the date of disqualification. *Rosalie Ridge LLC v. Dept. of Rev.*, 21 OTR

---

[3] The court's references to the Oregon Revised Statutes (ORS) are to 2017.

434, 438 (2014); *Angel v. Dept. of Rev.*, 21 OTR 444,448 (2014). With regard to intent, the court "cannot rely on [a] taxpayer's testimony alone, as such testimony tends to be self-serving." *Angel*, 21 OTR at 448. Nevertheless, credible witness testimony regarding objective circumstances and taxpayer actions may support a finding of forestland, even if the other evidence is "sparse and somewhat ambiguous, but nonetheless generally consistent with holding * * * property as forestland." *Rosalie Ridge*, 21 OTR at 442.

The evidence in the present case is certainly sparse: besides testimony, it consists only of taxpayers' two questionnaires.[4] However, taxpayers' unrebutted testimony provided details about their actions and the objective circumstances of the property. The court has no reason to doubt that the subjects were stocked with over 500 trees per acre, that the brothers had previously assisted in commercially logging the subjects, and that one brother continues to work in the logging industry. Those circumstances support a finding that the Dobsons intended to commercially harvest timber from the subjects again.

The county did not identify any overt acts of the Dobsons inconsistent with holding the subjects for timber harvest; instead, it treats as dispositive the "no" boxes the Dobsons checked on the questionnaires in response to Question 2. The county's witness likened the questionnaire to a "test" that the Dobsons had failed; in the county's view, explanations given by any taxpayers after learning that their properties had been disqualified carried no weight—truthful answers could be expected only before a taxpayer learned of the questionnaire's consequences. The county's witness testified that the questionnaire was the tool it used to differentiate landowners

/ / /

---

[4] Taxpayers' only exhibit was a copy of a court case, *Evans v. Josephine County Assessor*, TC–MD 110892C, WL 3027140 (Or Tax M Div July 12, 2012).

who intended to log their trees from those who, for example, opposed cutting trees on principle or sought to grow marijuana on their land.

The county's concern about the potential for self-serving explanations is legitimate, as the experience of the courts has shown. *See Angel*, 21 OTR at 448. However, even a carefully written question is open to misinterpretation. The county's question—"Do you intend to hold the forestland for the predominant purpose of growing and harvesting marketable timber?"—is complex, and a taxpayer unfamiliar with either ORS 321.257(2) or the legal concepts relevant to forestland designation might well have difficulty knowing what the realities are to which the words "predominant purpose" refer. The simple checkbox format may be administratively convenient, but it does little to confirm whether a landowner has understood the meaning of the question.

Christopher Dobson testified that he misunderstood the question as meant to ascertain whether the subjects would be held by a timber company; *i.e.*, a business presumably organized solely for the purpose of growing and harvesting timber. That is not an implausible misunderstanding, particularly by a homeowner who may well have other plans for the surrounding forestland before the eventual timber harvest. However, a "predominant purpose" is not necessarily a "sole purpose," and the presence of other compatible purposes need not disqualify a property as forestland. *See*, *e.g.*, *Angel v. Dept. of Rev.*, 21 OTR 444, 446 (2014) (finding forestland where pedestrian and bicycle access allowed); *cf. Found. of Human Understanding v. Dept. of Rev.*, 301 Or 254, 266, 722 P2d 1 (1986) (although forestland qualification not at issue, evidence showed designated forestland was component of "park-like sanctuary for spiritual and work therapy").

/ / /

Taxpayers' annotations to their questionnaires support their testimony that they intended to continue growing trees for harvest. In particular, taxpayers' explanation that no trees had been replanted after the previous harvest because that harvest had been selective indicates they were willing to harvest timber and intended to keep the land forested; if they had understood their answers to Question 2 as disclaiming an intent to grow trees for harvest, they would have had no reason to explain why replanting had not occurred after the last harvest.

There is little evidence to go around in this case, but that of the taxpayers is weightier. The checked boxes on the questionnaires are not conclusive as to intent. The Dobsons' annotations explaining why replanting after the previous harvests had not been necessary, as well as their unrebutted testimony about objective circumstances, indicate they continued holding the subjects for timber harvest.

## III. COSTS AND DISBURSEMENTS

Under Tax Court Rule – Magistrate Division (TCR–MD) 16 B, "costs and disbursements" are generally allowable to prevailing parties.

> " 'Costs and disbursements' are reasonable and necessary expenses incurred in the prosecution or defense of an action other than for legal services, and include the filing fee; the statutory fees for witnesses; the necessary expense of copying of any public record, book, or document used as evidence in the trial; and any other expense specifically allowed by agreement, by these rules, by TCR 68 A(2), or by other rule or statute."

TCR–MD 16 A.

Here, taxpayers filed Statements for Costs and Disbursements requesting costs equal to the sum of their filing fees and their "Josephine County Additional Tax for 2018." Defendant did not file an objection. *Cf.* TCR–MD 16 C(2)(a).

The court awards taxpayers their filing fees as the prevailing parties. *See* TCR–MD 16 A. Amounts paid by taxpayers to the county as additional tax pursuant to the county's

disqualification letters are not "expenses incurred in the prosecution or defense of an action" and may not be included in an award of costs and disbursements. *See* TCR–MD 16 A. However, the court's judgment will require the county to refund any amount collected in excess of what is owed for the subjects following reinstatement of the subject to forestland special assessment.

## IV.  CONCLUSION

Because taxpayers held the subjects for the predominant purpose of growing timber for harvest and sale, the subjects met the definition of forestland in ORS 321.257(2). Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is granted. The county shall reinstate the subject into forestland special assessment.

IT IS FURTHER DECIDED that the county shall pay Plaintiff $265, the amount of his filing fee.

Dated this ____ day of May, 2019.

POUL F. LUNDGREN
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed.  TCR-MD 19 B.*

*This document was signed by Magistrate Poul F. Lundgren and entered on May 8, 2019.*