Argued and submitted November 3, 2021; decision of Court of Appeals affirmed, judgment of circuit court reversed, and case remanded to circuit court for further proceedings April 28, 2022

CITY OF PORTLAND,
an Oregon municipal corporation,
*Petitioner on Review,*

*v.*

Mark BARTLETT,
*Respondent on Review.*

(CC 16CV01529) (CA A164469) (SC S067940)

509 P3d 99

Defendant sought disclosure under the public records law, ORS 192.390, of four public records that were prepared by the Portland City Attorney for city officials more than 25 years ago. The city sought a judgment declaring that those records were privileged attorney-client communications and therefore exempt from disclosure. The trial court held that the records were exempt from disclosure, but the Court of Appeals reversed. *Held*: (1) The attorney-client privilege does not exempt public records more than 25 years old from disclosure under the public records law; and (2) that interpretation of the public records law does not violate the city's home-rule authority under the Oregon Constitution.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

On review from the Court of Appeals.*

Denis M. Vannier, Office of the City Attorney, Portland, argued the cause and filed the briefs for petitioner on review.

Chris Swift, Davis Wright Tremaine LLP, Portland, argued the cause for respondent on review. Duane A. Bosworth filed the brief for respondent on review.

Carolyn H. Connelly, Local Government Law Group PC, Eugene, filed the brief for *amicus curiae* League of Oregon Cities.

_____

* Appeal from Multnomah County Circuit Court, Eric J. Neiman, Judge pro tempore. 304 Or App 580, 468 P3d 980 (2020).

Before Walters, Chief Justice, and Balmer, Flynn, Duncan, Nelson, and Garrett, Justices.**

BALMER, J.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

_____

** Nakamoto, J., retired December 31, 2021, and did not participate in the decision of this case. DeHoog, J., did not participate in the consideration or decision of this case.

**BALMER, J.**

This case requires us to consider the relationship between two statutes that both protect important interests: the public records law, which provides that "[e]very person has a right to inspect any public record of a public body in this state, except as otherwise expressly provided by [specific statutes]," ORS 192.314,[1] and the attorney-client privilege, which gives a lawyer's client "a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications" with the client's lawyer, OEC 503(2). In 1979, the legislature amended the public records law to provide that, with certain exceptions, "public records that are more than 25 years old shall be available for inspection." ORS 192.390 (*former* ORS 192.495 (2015)); Or Laws 1979, ch 301, § 2. The specific question presented in this case is whether four documents that were prepared more than 25 years ago by the Portland City Attorney for the mayor and two city commissioners and that are subject to the attorney-client privilege must be disclosed under ORS 192.390. For the reasons set out below, we conclude that those documents must be disclosed. We therefore affirm the decision of the Court of Appeals and reverse the judgment of the circuit court.

## I.   BACKGROUND

Defendant requested the City of Portland to release three city attorney opinions and one legal memorandum. The parties agree that the documents are public records, are within the scope of the attorney-client privilege, and are more than 25 years old. The city declined to release the documents, arguing that they are exempt from the public records law because of the attorney-client privilege. Pursuant to the statutory procedure for review of the city's decision, ORS 192.415 (*former* ORS 192.460 (2015)), defendant petitioned the district attorney to order release of the documents on the ground that ORS 192.390 required their release,

---

[1] ORS 192.314 and several of the other statutes referred to in this opinion have been amended and renumbered since the events in this case took place, *see former* ORS 192.420 (2015), *renumbered as* ORS 192.314 (2017); however, because those amendments do not affect our analysis, we refer to the current versions of the statutes cited throughout this opinion. Where applicable, renumbering is indicated parenthetically.

notwithstanding the attorney-client privilege. The district attorney ordered the documents' release, and the city then brought this action seeking a declaratory judgment that the documents are exempt from disclosure. The trial court agreed with the city and held that the public records law did not require the disclosure of the documents.

The Court of Appeals reversed in an en banc, split decision. *City of Portland v. Bartlett*, 304 Or App 580, 468 P3d 980 (2020). The majority recognized that "the issue is close because of the confusing intersection among the various statutes," including the competing policies of the broad privilege protecting attorney-client communications and "a public records law that promotes disclosure and a sunset on exemptions to public disclosure." *Id.* at 591. But it concluded that "the text of ORS 192.390 unambiguously states that records that are older than 25 years *shall* be disclosed, *notwithstanding* the exemptions from disclosure contained in ORS 192.355." *Id.* at 585 (emphases in original). The express exemptions in ORS 192.390 include ORS 192.355 (*former* ORS 192.502 (2015)). That statute, in turn, refers to "[p]ublic records or information the disclosure of which is prohibited or restricted or otherwise made confidential or privileged under Oregon law," ORS 192.355(9)(a)—a category of records sometimes referred to as the "catchall" exemption—which, the majority held, include records subject to the attorney-client privilege. *Bartlett*, 304 Or App at 585-86. The majority also rejected the city's argument that requiring disclosure of the documents would interfere with its home-rule powers under Article IV, section 1(5), and Article XI, section 2, of the Oregon Constitution. *Id.* at 592-97.

Judge Powers dissented, joined by Judges DeVore and James, asserting that the "[n]otwithstanding" clause in ORS 192.390 applies only to exemptions "expressly listed in ORS 192.345 and ORS 192.355—not the lawyer-client privilege codified at OEC 503, or any other privilege or confidential public record not specifically identified in [the public records law]." *Bartlett*, 304 Or App at 597 (Powers, J., dissenting). In particular, the dissent would read the "[n]otwithstanding" clause *not* to apply "to an exemption not expressly identified by the legislature in ORS 192.345 or ORS 192.355," *id.*; that is, it would not read the clause to

encompass an exemption that is operative only through the catch-all exemption in ORS 192.355(9)(a). Because, in the dissent's view, the attorney-client privilege is not "expressly identified" in those listed statutes, the dissent concluded that the documents need not be disclosed.

## II.   THE STATUTORY FRAMEWORK

We turn to the critical statutes, utilizing the approach set out in *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). As we summarized *Gaines* in *Kinzua Resources v. DEQ*, 366 Or 674, 680, 468 P3d 410 (2020), when interpreting statutes, "the paramount goal is to discern the intention of the legislature," which we do by "giv[ing] primary weight to the text and context of the disputed statutory terms," because "there is no more persuasive evidence of the intent of the legislature than the words by which the legislature undertook to give expression to its wishes." (Internal quotation marks omitted.) We also consider legislative history for what it may be worth in a particular case. *Id.*

We first discuss in general terms the statutes whose intersection creates the issue before us. Examining more closely the text and context of those statutes, we then evaluate the parties' arguments about how those statutes should be interpreted. We also consider whether any aspects of the legislative history offered by the parties assist us in our interpretative effort.

A.   *The Public Records Law and the Attorney-Client Privilege: Text and Context*

The statutory right of Oregonians to inspect public documents goes back at least to 1862: "Every citizen of this state has a right to inspect any public writing of this state, except as otherwise expressly provided by this code or some other statute." General Laws of Oregon, Civ Code, ch VIII, title V, § 707, p 326 (Deady 1845-1864). The public records law took its current form in 1973, *see* Or Laws 1973, ch 794, § 3, but the statutory policy of disclosure, in the absence of a specific exception, remains as it was in 1862: "Every person has a right to inspect any public record of a public body in this state, except as otherwise provided by ORS 192.338, 192.345 and 192.355." ORS 192.314(1). We have said of the

public records law, "Under the statutory scheme, disclosure is the rule. Exemptions from disclosure are to be narrowly construed." *Guard Publishing Co. v. Lane County School Dist.*, 310 Or 32, 37, 791 P2d 854, *recons den* (1990). And we have emphasized that the "people's right to inspect public records is fundamental." *American Civil Liberties Union v. City of Eugene*, 360 Or 269, 299, 380 P3d 281 (2016) (internal quotation marks omitted). Those general statements of the importance of access to public records, however, cannot resolve this case—which involves another fundamental and deeply rooted right—and we turn to the operative text of the public records law.

As set out above, ORS 192.314 establishes the right of every person to inspect a public record "except as otherwise expressly provided by ORS 192.338, 192.345 and 192.355." The third statute listed, ORS 192.355, is the one at issue here. The first of the three statutory provisions listed, ORS 192.338 (*former* ORS 192.505 (2015)), simply directs public bodies, if records are exempt under the second and third statutes, to separate exempt material from nonexempt material and disclose the nonexempt material. The two other statutory provisions, ORS 192.345 (*former* ORS 192.501 (2015)) and ORS 192.355, contain substantive exemptions. ORS 192.345 lists records that are exempt from disclosure "unless the public interest requires disclosure in the particular instance." Those records include materials such as "[t]rade secrets," "[i]nvestigatory information compiled for criminal law purposes," and "[t]est questions, scoring keys, and other data" used in licensing or academic testing. ORS 192.345(2)-(4). Those are sometimes referred to as "conditional" exemptions because, when the public interest requires, otherwise confidential records must be disclosed. The third statute, ORS 192.335, unconditionally exempts a wide variety of public records from disclosure, including, for example, private personal information the disclosure of which would be an unreasonable invasion of privacy, personal addresses and phone numbers of public employees (in certain circumstances), and certain financial investment records maintained by the state treasurer and the Oregon Investment Council. ORS 192.355(2)(a), (3), (13).

ORS 192.355 also includes, as paragraph (9)(a), the catchall exemption, which exempts from disclosure "[p]ublic records or information the disclosure of which is prohibited or restricted or otherwise made confidential or privileged under Oregon law." That provision, the parties agree, generally exempts communications less than 25 years old and subject to the attorney-client privilege from the otherwise applicable disclosure requirements of the public records law.

It is undisputed that the documents at issue here were exempt from disclosure at the time they were prepared. The controversy arises because of ORS 192.390 (*former* ORS 192.495 (2015)), the precursor to which was enacted in 1979, and which requires the disclosure of records that are more than 25 years old:

> "Notwithstanding ORS 192.338, 192.345 and 192.355 and except as otherwise provided in ORS 192.398, public records that are more than 25 years old shall be available for inspection."

That text mandates the disclosure of such public records "[n]otwithstanding" the exemptions set out in ORS 192.355, which, as noted, is the provision that generally excludes public records subject to the attorney-client privilege from disclosure. And ORS 192.390 also *excludes* from disclosure, even after 25 years, certain categories of records, such as certain medical records, records "sealed in compliance with statute or by court order," and "[s]tudent records required by state or federal law to be exempt from disclosure." ORS 192.398 (*former* ORS 192.496 (2015)). Thus, by the plain terms of ORS 192.390, the 25-year sunset provision applies to all public records "[n]otwithstanding" the exemptions found in ORS 192.355 and "except[ing]" only records included in ORS 192.398. The text and structure of ORS 192.390 strongly suggest that there is no general exemption for public records covered by the attorney-client privilege that are more than 25 years old.[2]

---

[2] We say no "general" exemption for public records of attorney-client communications, because some of those records may be subject to the express "except[ion]" to disclosure in ORS 192.398. Other attorney-client communications, although in the possession of a public entity, may not be "public record[s]," as defined in ORS 192.005(5), and therefore may not be subject to the public records law. There is no dispute, however, that the records at issue here are public records.

The city challenges that reading of the public records law on textual, contextual, and legislative intent grounds, and we consider those arguments below. But many of the city's contentions are founded on the importance of the attorney-client privilege, and we begin there.

We agree, of course, that the attorney-client privilege "promote[s] broader public interests in the observance of law and administration of justice," *State ex rel OHSU v. Haas*, 325 Or 492, 500, 942 P2d 261 (1997), and that it is a foundational principle of our legal system. But, like the public records law, the attorney-client privilege is subject to various exceptions and limitations, and it must be read and applied consistently with other sources of law. The attorney-client privilege is rooted in the common law, *see State v. Jancsek*, 302 Or 270, 274, 730 P2d 14 (1986), but it has been the subject of Oregon statutes since 1862, *see* General Laws of Oregon, Civ Code, ch VIII, title III, § 702(2), p 325 (Deady 1845-1864). And with the enactment of the Oregon Evidence Code in 1981, Or Laws 1981, ch 892, the definitions of "[c]lient," "[l]awyer," and "[c]onfidential communication," as well as the scope of communications subject to the privilege, waiver, and related issues of application, were codified in OEC 503(1)(a) to (c). The core of the privilege is set out in OEC 503(2):

> "A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client."

Although the attorney-client privilege is a key aspect of the dispute here, the details of the application *vel non* of the privilege are not in play in this case. Everyone agrees that the records are privileged. The question is whether the public records law requires the disclosure of the records notwithstanding the fact that they are privileged. As explained above, the text of ORS 192.390 suggests that it requires disclosure of records more than 25 years old notwithstanding the exemptions in ORS 192.355, including paragraph (9)(a), which exempts "[p]ublic records or information the disclosure of which is prohibited or restricted or otherwise made confidential or privileged under Oregon law." Because the

attorney-client privilege restricts the disclosure of "confidential communications," OEC 503(2), privileged public records come within the exemption to disclosure in ORS 192.355(9)(a). But that also means that, after 25 years, they are subject to disclosure "[n]otwithstanding" that exemption, unless other grounds for an exemption exist.

The city responds to that textual argument by asserting that the legislature cannot have intended the "[n]otwithstanding" clause to sweep so broadly as to require the disclosure after 25 years of the "confidential or privileged" records referred to in ORS 192.355(9)(a). That interpretation, the city claims, would render the "[n]otwithstanding" clause, which cites three statutes, including ORS 192.355, "superfluous" or "redundant" because the legislature instead "could simply have stated, 'public records older than 25 years shall be available for inspection.'" But that argument fails for several reasons. First, as we discuss in greater detail below, the legislature clearly did *not* intend to make all public records available for inspection after 25 years, as ORS 192.390 itself, in addition to the "[n]otwithstanding" clause, expressly "except[s]" from disclosure a smaller category of records described in ORS 192.398. Second, although we do seek to give meaning to all the words in a statute, "nothing prohibits the legislature from saying the same thing twice or * * * from providing two different statutory paths" to achieve the same result. *Thomas Creek Lumber and Log Co. v. Dept. of Rev.*, 344 Or 131, 138, 178 P3d 217 (2008); *see also State v. Cloutier*, 351 Or 68, 97, 261 P3d 1234 (2011) ("We wish to be clear that the fact that a proposed interpretation of a statute creates some measure of redundancy is not, by itself, necessarily fatal. Redundancy in communication is a fact of life and of law."). More fundamentally, the city's textual argument here suffers from the same shortcomings that the Court of Appeals' majority identified in the dissent in that court:

> "[F]or the dissent's position to hold, it has to entirely rewrite the 'notwithstanding clause' by inserting substantial additional text. Under the dissent's position, the sunset provision in ORS 192.390 would apply 'notwithstanding the expressly stated exemptions in ORS 192.338, 192.345, and 192.355 but excepting those exemptions incorporated

by ORS 192.355(9)(a).' That would entirely redraft the text of ORS 192.390, which we cannot do."

*Bartlett*, 304 Or App at 591 (underscoring in original).

The textual analysis of ORS 192.390 is straightforward and contrary to the city's claim that the documents here are exempt from disclosure. The city, however, raises a number of plausible arguments based on related statutes and context in support of its position that a different interpretation of the relevant statutes is not simply permissible, but is required. We turn to those now.

The city first argues that the disclosure of records more than 25 years old does not apply to records that are subject to the attorney-client privilege because that privilege "is not a creation of, and it is not codified in, any of the statutes enumerated in ORS 192.390 or elsewhere in the Public Records Law." But nothing in the public records law suggests that the disclosure requirement is so limited. Although the attorney-client privilege is rooted in the common law and now codified in the Oregon Evidence Code—rather than being a "creation" of the public records law—it clearly comes within the catchall provision of ORS 192.355(9)(a) for public records "the disclosure of which is prohibited or restricted or otherwise made confidential or privileged under Oregon law." That provision, of course, is a key part of the public records law because it ensures that such records are "exempt from disclosure" under the general disclosure requirement of ORS 192.314, quoted above. ORS 192.355. But ORS 192.390 then expressly requires disclosure of documents more than 25 years old "[n]*otwithstanding* \*\*\* ORS 192.355." (Emphasis added.) In other words, the statutory text provides that records subject to the attorney-client privilege are exempt from disclosure when created because, under ORS 192.355(9)(a), they are "confidential or privileged under Oregon law." After 25 years, however, disclosure is required "[n]otwithstanding" that exemption.

That conclusion from the statutory text and context is further supported by the statutes that preceded the 1987 enactment of the catchall exception that now appears in ORS 192.355(9)(a). Or Laws 1987, ch 373, § 23e(8). As this court has pointed out, before 1987, the public records law exception

for records that were confidential or privileged "attempted to list every statute outside the public records law that in any way prohibited or restricted disclosure of public records," but the legislature abandoned that effort in favor of the catchall exemption because of the difficulty of maintaining a comprehensive list when statutes were amended, added, and repealed so frequently. *Oregonian Publishing v. Portland School Dist. No. 1J*, 329 Or 393, 399, 987 P2d 480 (1999). That history indicates that the attorney-client privilege—which was listed in the predecessor to ORS 192.355(9)(a) as an exemption from disclosure requirements, *see former* ORS 192.500(2)(h) (1985), *repealed by* Or Laws 1987, ch 764, § 1—was intended to be captured by the catchall exemption. And, in turn, that such documents would be subject to disclosure after 25 years, "[n]otwithstanding" that exemption.

    The city's argument that records over 25 years old that are subject to the attorney-client privilege should be exempt from disclosure is further undercut by the context of ORS 192.390. As noted, the city argues that ORS 192.390 does not apply to exemptions other than those created by or codified in the public records law. Yet the statute itself, while requiring disclosure "[n]otwithstanding" certain exemption provisions, like ORS 192.355, carves out a different exception: "except as otherwise provided in ORS 192.398." ORS 192.398 sets a 75-year time period after which certain medical records and records "sealed in compliance with statute or by court order" must be disclosed, as well as different or no time limits on the disclosure exemption for other records.[3]

---

[3] ORS 192.398 provides:

"The following public records are exempt from disclosure:

"(1) Records less than 75 years old which contain information about the physical or mental health or psychiatric care or treatment of a living individual, if the public disclosure thereof would constitute an unreasonable invasion of privacy. The party seeking disclosure shall have the burden of showing by clear and convincing evidence that the public interest requires disclosure in the particular instance and that public disclosure would not constitute an unreasonable invasion of privacy.

"(2) Records less than 75 years old which were sealed in compliance with statute or by court order. Such records may be disclosed upon order of a court of competent jurisdiction or as otherwise provided by law.

"(3) Records of a person who is or has been in the custody or under the lawful supervision of a state agency, a court or a unit of local government, are exempt from disclosure for a period of 25 years after termination of such

The exclusion of those records from disclosure refutes the city's claim that ORS 192.390 applies only to exemptions created in or codified by the public records law. ORS 192.398, for example, refers to records "sealed in compliance with statute" and "[s]tudent records required by state or federal law to be exempt from disclosure." Those exemptions are codified outside the public records law. If the city's argument were correct, ORS 192.398 would have been unnecessary.

The legislature's enactment of ORS 192.398 also refutes the premise underlying several of the city's contentions: that the legislature gave no thought at all to maintaining the confidentiality of sensitive public records. Indeed, the presence of exceptions for records "sealed in compliance with statute or by court order," ORS 192.398(2), records regarding the physical or mental health of living persons, ORS 192.398(1), and student records exempt from disclosure under state or federal law, ORS 192.398(4), shows that the legislature knew how to—and did—protect such records from disclosure. But, for whatever reason, the legislature did not provide a similar exception for public records that are covered by the attorney-client privilege.

The city also offers a number of arguments based on the independent significance of OEC 503 and the importance of the attorney-client privilege. We address the specific textual and contextual arguments the city makes and then turn to the city's broader theme based on those assertions. First, the city points out that OEC 503(2) provides that "[a] client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services," that "[c]lient" includes public bodies and their officers, OEC 503(1)(a), and that the rule provides "no limitation on the privilege based on time

_____

custody or supervision to the extent that disclosure thereof would interfere with the rehabilitation of the person if the public interest in confidentiality clearly outweighs the public interest in disclosure. Nothing in this subsection, however, shall be construed as prohibiting disclosure of the fact that a person is in custody.

"(4) Student records required by state or federal law to be exempt from disclosure."

or the Public Records Law." The city takes the position that this "unlimited privilege" bars disclosure under the public records law. But, as defendant argues, the city tends to conflate the concepts of a "privilege" applicable to attorney-client public records and an "exemption" from disclosure under the public records law, seeming to contend that, if a record is "privileged" under OEC 503, then it also must be "exempt" under the public records law. But those statutes operate independently, promote different goals, and use different terms.

That difference was recognized by the legislature and is highlighted in OEC 503(7), which provides, "Notwithstanding [OEC 511]"—under which the voluntary disclosure of a privileged communication may constitute a waiver of the attorney-client privilege—"a privilege is maintained under this section for a communication ordered to be disclosed under [the public records law]." That provision makes clear that, although the disclosure of a communication may be required because the communication is not exempt from disclosure under the public records law, the communication nevertheless "maintain[s]" its "privilege[d]" character for evidentiary purposes under the Oregon Evidence Code.

OEC 503(7) also answers the city's argument that the attorney-client privilege and the disclosure requirement of ORS 192.390 are in unreconcilable conflict, which must be resolved either by favoring the later enacted provision over the earlier or the more particular provision over the more general. Putting to one side the difficulty of determining which of two statutes that have been amended multiple times over the years is "later," or which of two statutes that address different subjects is more "particular," OEC 503(7) shows that the legislature did not view the attorney-client privilege and the disclosure requirements of the public records law as inconsistent. Rather, the legislature gave effect to both statutes. OEC 503(7) recognizes that the public records law may require disclosing some communications subject to the attorney-client privilege— and does not treat all such communications as exempt— but nevertheless protects the evidentiary privilege for such communications.

The city is correct that the attorney-client privilege in OEC 503 is not *solely* an evidentiary privilege. In addition to protecting against the use of privileged communications as evidence in legal proceedings, OEC 503(2) gives a client "a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client." But OEC 503(7) expressly acknowledges that privileged communications may be subject to disclosure under the public records law and clarifies that such disclosure will not constitute a voluntary waiver of the privilege. The drafters of the Oregon Evidence Code apparently felt that that protection resolved any conflict between the two laws. One can argue, as the city does, that that resolution fails to give sufficient weight to the city's interest in preventing disclosure of privileged documents over 25 years old, but that is the balance that the text of the statutes appears to endorse.

The city also argues that ORS 192.390 cannot require the disclosure of attorney-client communications because "the exceptions codified in OEC 503(4) were 'intended [by the legislature] as a complete enumeration of the exceptions to the attorney-client privilege.' *Crimson Trace Corp. v. Davis Wright Tremaine LLP*, 355 Or 476, 501, 326 P3d 1181 (2014)." The city reads too much into the quoted sentence. *Crimson Trace Corp.* used the word "exception" to the attorney-client privilege, and although that word is not incorrect in describing the effect of OEC 503(4), it is imprecise because that rule actually begins with the proviso, "There *is* no privilege under this section." (Emphasis added.) And the paragraphs that follow that proviso are not actually exceptions, but circumstances—none of them relevant to the issue before us—where there *is* no attorney-client privilege. But that is not the case here, where the parties agree that the documents at issue were privileged at the time they were created and are privileged now.

The question is not whether the records are "exempt" from OEC 503, but whether they are exempt from disclosure under the public records law. In *Crimson Trace Corp.*, this court simply refused to recognize a "fiduciary exception" (which, it stated, "does not exist in Oregon") and

to "compel production of communications that otherwise fell within the general scope of the privilege." 355 Or at 501. Here, of course, the public records law *does* require disclosure of public records over 25 years old, unless a specific exemption applies. And, as noted, the text of OEC 503 itself acknowledges, in subsection (7), that privileged documents will sometimes be subject to disclosure under the public records law, and for that reason, provides that the evidentiary privilege will continue to apply to such communications, notwithstanding their disclosure.

For the reasons discussed above, the text of ORS 192.390 and the context provided by other provisions of the public records law do not support the city's proposed interpretation of that statute as not applying to attorney-client communications over 25 years old. Nor does the privilege protected by OEC 503 conflict with the disclosure requirement of ORS 192.390. OEC 503 recognizes a privilege against the disclosure of certain communications, but its express reference to the public records law in OEC 503(7) and its treatment of communications disclosed under that law shows that the legislature understood the potential problems of disclosure and adopted a policy to respond to those concerns.

B.    *Legislative Intent and Legislative History*

The city marshals a series of other arguments that the legislature could not have intended the public records law to require the city's attorney-client communications, even communications more than 25 years old, to be disclosed. Most of those arguments are unsupported by, or contrary to the intent reflected in, the words the legislature used. The city contends that the legislature would not have wanted to "create a second-class [attorney-client] privilege for public bodies, their officers, and employees" by permitting the disclosure of their privileged communications after 25 years, but not the privileged communications of nongovernment entities. But the existence of the public records law itself seriously undermines that argument. The public records law—like other statutes that apply only to public entities, such as the public meetings law, ORS 192.610 to 192.695, and the public contracting code, ORS chapters 279,

279A, 279B, and 279C—was adopted to ensure transparency, openness, and fairness in government operations. *See* ORS 192.620, ORS 279A.015. To be sure, with each of those statutes, a balance must be struck that promotes those values, while ensuring that government agencies can conduct their business efficiently and without unreasonable cost or delay—and it is up to the legislature to establish that balance. But the fact that a different disclosure rule may apply to government attorney-client communications after 25 years than to such communications by private parties is not necessarily surprising, given the purpose animating the public records law. And that different treatment does not indicate that the legislature intended ORS 192.390 to operate in some other manner.

The city also claims that if ORS 192.390 requires disclosure of public records that are privileged under *state* law because of the catchall exemption in ORS 192.355(9)(a), then ORS 192.390 would also necessarily apply to documents the disclosure of which is prohibited by *federal* law. *See* ORS 192.355(8). That result, the city asserts, would violate the Supremacy Clause of the United States Constitution, US Const, Art VI, and therefore cannot have been intended by the legislature. To the contrary, such a result would simply mean that the public records law could not be enforced as to those documents—and that the statute attempted (ineffectively) to extend state authority beyond federal constitutional limits.

Underlying some of the city's arguments discussed above and explicit in other aspects of its briefing is its basic contention that the legislature did not intend the disclosure requirement for public records over 25 years old to apply to communications subject to the attorney-client privilege. The city notes that the 1979 amendment to the public records law was proposed by the state archivist to "simplify use of certain case file type records for longitudinal research, *** genealogical research." Tape Recording, Senate Committee on the Judiciary, SB 2011, May 16, 1979, Tape 43, Side 1 (statement of State Archivist J. D. Porter). And, although potentially confidential records involving physical and mental health reports, corrections and criminal justice

matters, and some court documents were discussed, the city explains, "the record does not show that any discussion of the attorney-client privilege occurred." Similarly, the city argues that the legislative history of OEC 503—both its enactment in 1981 and the addition of OEC 503(7) in 2007, Or Laws 2007, ch 513, § 3—does not indicate any discussion of exceptions to attorney-client privilege based on the public records law.

The city is correct that the legislative history of ORS 192.390 does not indicate that the legislature specifically discussed whether the disclosure requirement would apply to records that are attorney-client communications and are more than 25 years old. Furthermore, the legislative history of OEC 503, including the addition of OEC 503(7), does not affirmatively show that the legislature intended to create an exception to the attorney-client privilege for such public records. But neither does the legislative history demonstrate that the legislature did *not* intend those results. The legislative history is essentially silent on the specific issue before us. In such circumstances, "text and context remain primary, and must be given primary weight in the analysis," because "there is no more persuasive evidence of the intent of the legislature than the words by which the legislature undertook to give expression to its wishes." *Gaines*, 346 Or at 171 (internal quotation marks omitted). As outlined above, the text and context support defendant's position. Although the public records law and OEC 503 could more clearly set out the relationship between the disclosure requirement for public records over 25 years old and privileged attorney-client communications, the cross-references between the statutes demonstrate that the legislature was at least aware of the implications that one statute could have for the other. ORS 192.390 expressly states that disclosure of older records is required "[n]otwithstanding" the public records law exemptions in ORS 192.355, which, until 1987, expressly referred to the attorney-client privilege and, after 1987, grouped the privilege with other state laws making records privileged or confidential. And OEC 503(7) shows that the legislature understood that the public records law could require the disclosure of communications subject to the attorney-client privilege.

## III.  LOCAL GOVERNMENT HOME-RULE AUTHORITY

The city and *amicus curiae* League of Oregon Cities argue that ORS 192.390, if interpreted to require the disclosure of public records older than 25 years notwithstanding the attorney-client privilege and applied to local governments, would violate the two "home-rule" provisions of the Oregon Constitution. Or Const, Art IV, § 1(5); Art XI, § 2. In the city's view, those two provisions "prevent the legislature from abrogating, limiting, or waiving the attorney-client privilege of home-rule cities," and this court should therefore "construe ORS 192.390 to operate consistently with that constitutional limitation." For the reasons discussed below, we do not agree that our interpretation of ORS 192.390 interferes with the home-rule authority of local governments.

As we recently summarized in *City of Damascus v. State of Oregon*, 367 Or 41, 54, 472 P3d 741 (2020), the first home-rule provision, Article XI, section 2, "grants the voters of every city and town the authority to enact and amend their own municipal charter, and bars the legislature from enacting, amending or repealing any city charter."[4] 367 Or at 54. The second, Article IV, subsection 1(5), by its text, reserves the initiative and referendum powers to the voters of each municipality "as to all local, special and municipal legislation of every character in or for their municipality or district."[5] Relying on this court's foundational decision in *LaGrande/Astoria v. PERB*, 281 Or 137, 576 P2d 1204,

---

[4] Article XI, section 2, provides, in part:

"The Legislative Assembly shall not enact, amend or repeal any charter or act of incorporation for any municipality, city or town. The legal voters of every city and town are hereby granted power to enact and amend their municipal charter, subject to the Constitution and criminal laws of the State of Oregon."

[5] Article IV, section 1(5), provides:

"The initiative and referendum powers reserved to the people by subsections (2) and (3) of this section are further reserved to the qualified voters of each municipality and district as to all local, special and municipal legislation of every character in or for their municipality or district. The manner of exercising those powers shall be provided by general laws, but cities may provide the manner of exercising those powers as to their municipal legislation. In a city, not more than 15 percent of the qualified voters may be required to propose legislation by the initiative, and not more than 10 percent of the qualified voters may be required to order a referendum on legislation."

*aff'd on reh'g*, 284 Or 173, 142-45, 586 P2d 765 (1978), we observed:

> "[T]he primary concern of those who advocated for the measures was that the voters of municipalities be permitted to determine the structure and organization of their own municipal governments, but that they did not intend to oust the state legislature from making substantive law affecting cities and towns."

*City of Damascus*, 367 Or at 55; *see also LaGrande*, 281 Or at 156 (statutes may not interfere with "the structure and procedures" of local government unless needed "to safeguard the interests of persons affected by" those procedures). We explained, however, that, although local governments had the authority to enact and amend their own charters and municipal legislation, the home-rule provisions

> "did *not* impose limits on the legislature with respect to making *substantive* law that affects municipalities. And because the municipal government and the state legislature will at times quite lawfully pursue substantive objectives regarding the same subjects, * * * there will be occasions when state and local substantive laws overlap or conflict. In such cases, * * * the state and local law must be allowed to operate concurrently, if possible, but if that is *not* possible, the state law will displace the local law."

*City of Damascus*, 367 Or at 55-56 (citation omitted; emphases in original).

The city cites provisions in the Portland City Charter that confer on the city "all governmental powers" permissible under state law and vest those powers in the mayor and four commissioners. Portland City Charter §§ 1-102, 2-102. And the city refers to sections of the Portland City Code that establish "an attorney-client relationship" between the city attorney and the city and that provide that "opinions and advice" from the city attorney "are privileged attorney-client communications." Portland City Code 3.10.060(A), (B). Based on those sources of law, the city argues that the "privilege [is] part of its governmental structures and procedures" and that requiring the disclosure of public records subject to the privilege—even 25 years after the documents are

created—would be an unconstitutional interference with those "structures and procedures."

The city's argument touches on both aspects of home-rule authority: local voters' authority "to determine the structure and organization of their own municipal governments" without state interference, *City of Damascus*, 367 Or at 55, and local governments' authority to make substantive laws for their residents, unless such laws conflict with state legislation, *id.* at 55-56. As to the first aspect of home-rule authority, the public records law, including ORS 192.390, simply has no effect on the "structure and organization" of the city's government: It does not limit or alter the city's form of government, its charter's locus of governmental authority, or the procedures for adopting ordinances. It does not interfere with voters' authority to "decide upon the organization of their government and the scope of its powers." *LaGrande*, 281 Or at 142.

As to the second aspect of home rule, the legislature enacted the public records law to establish uniform rules with respect to such records for state and local government entities conducting government operations. *See* ORS 192.001. The public records law is a statute of general applicability, like the statute in *LaGrande*, which required local governments to provide a certain level of retirement benefits for police officers and firefighters, ORS 237.610 - 237.640; ORS 243.005 - 243.055, and the statute in *City of Damascus*, which established statewide procedures for local government disincorporation elections, Or Laws 2019, ch 545. It is "substantive law affecting cities and towns," and the home-rule provisions do not "oust the legislature from making" such laws. *City of Damascus*, 367 Or at 55. State and local substantive laws can and do operate concurrently, but, when they are in conflict, "the state law will displace the local law." *Id.* at 56. Thus, even if we were to assume that the legislature's disclosure requirement in ORS 192.390 and that provision's related effect on OEC 503, as applied to the city's attorney-client communications, were somehow inconsistent with provisions of the city code that make reference to that privilege, the city would have to comply with the former. The city's argument that requiring disclosure of the documents

at issue here would violate the home-rule provisions in the Oregon Constitution is not well taken.

## IV.   CONCLUSION

To summarize, we conclude that the communications between the city attorney and city officials at issue here are not exempt from disclosure under ORS 192.390 on the ground that they are subject to the attorney-client privilege. The city has not asserted any other basis for not disclosing those four documents. It may be that, in a different case—perhaps one involving ongoing litigation—the city would have additional grounds to assert that such documents need not be disclosed under ORS 192.390. And, of course, if documents subject to the attorney-client privilege do not come within the definition of "[p]ublic record[s]," ORS 192.005(5), they are not subject to the public records law at all. But those issues are not presented here, and we do not address them. We also conclude that disclosure of the records here does not interfere with the "structure and procedures" of the city's government, but is instead the application of "a general law addressed primarily to substantive social, economic, or other regulatory objectives of the state," *LaGrande*, 281 Or at 156, and the public records law therefore prevails over any inconsistent city law.

We recognize the city's argument that the legislature may not have intended the 25-year disclosure requirement for public records to sweep as broadly as it does. The city identifies a number of legitimate concerns about potentially adverse consequences for public bodies if they are required to disclose privileged attorney-client communications over 25 years old.[6] Perhaps, as the city suggests, if the

---

[6] The city also asserts that our holding here cannot be limited to attorney-client communications but would also apply to other public records subject to the catchall exemption in ORS 192.355(9)(a). The city lists "confidential" records that may be subject to disclosure after 25 years as including crime victim information, ORS 18.048(2)(b), the identity of informants, ORS 40.275(2), information on voter's disability in voter registration records, ORS 247.973(5), and the identity of individuals receiving HIV-related tests by any licensed health care provider, ORS 433.045(4)(a), among others. *See also Bartlett*, 304 Or App at 605-06 (Powers, J., dissenting) (listing similar public records exemptions that "will no longer be viable" for public records over 25 years old). We express no opinion regarding the application of ORS 192.390 to those other categories of records, as other statutes and arguments that we have not considered in this case may apply to other records.

legislature had considered the specific question of whether ORS 192.390 should apply to attorney-client communications, then it would have exempted or limited its application. But "[t]he legislature may and often does choose broader language that applies to a wider range of circumstances than the precise problem that triggered legislative attention." *South Beach Marina, Inc. v. Dept. of Rev.*, 301 Or 524, 531, 724 P2d 788 (1986). And when it does, "[i]n the absence of an affirmative showing that the narrower meaning actually was intended by the drafters," we ordinarily take the legislature at its word and interpret the statute as written. *Id*. We have no authority to rewrite the public records law, and the city and *amicus* League of Oregon Cities must look to the legislature to address their concerns.

For the reasons discussed above, the trial court erred in granting the city's motion for summary judgment and denying defendant's motion for summary judgment. We agree with the Court of Appeals decision reversing the trial court's judgment and remanding for the trial court to enter a declaratory judgment in favor of defendant, consistent with this opinion.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

---

Nevertheless, it is apparent that, given the potential scope of the conclusion we reach here, the legislature may wish to revisit aspects of the public records law or confidentiality statutes for particular records to ensure that the statutes align with its policy choices and that uncertainty regarding public agency obligations and important privacy and confidentiality interests is minimized. We note that exemptions from disclosure may be found both within the public records law, *e.g.*, ORS 192.398, or within other statutes relating to particular types of records, *e.g.*, ORS 279C.815(4) (exempting from disclosure reports made to the Bureau of Labor and Industries for the purpose of determining prevailing wage rates, notwithstanding the public records law); ORS 305.192(1) (exempting from disclosure documents produced in connection with the appraisal or assessment of industrial property, notwithstanding the public records law).