IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

SCOTT EICHORN,                                )
                                              )
                Plaintiff,                    )   TC-MD 210323R
                                              )
        v.                                    )
                                              )
YAMHILL COUNTY ASSESSOR,                      )
                                              )
                Defendant.                    )   **DECISION**

Plaintiff appealed Defendant's Notice of Disqualification from Forestland Special

Assessment dated May 6, 2021.  A trial was held on April 14, 2022, in the courtroom of the

Oregon Tax Court.  Christopher Koback, Hathaway Larson LLP, appeared on behalf of Plaintiff.

Melissa Aker (Aker), Charmal Mattson (Mattson), Scott Eichorn (Eichorn), and Derrick Wharff

(Wharff), Yamhill County Assessor, testified as witnesses during Plaintiff's case-in-chief.

Laurie Craghead, attorney-at-law, appeared on behalf of Defendant.  Ken Friday (Friday),

Yamhill County Planning Director, testified during Defendant's case-in-chief.  Plaintiff's

Exhibits 1 to 14 and Defendant's Exhibits A to S were admitted into evidence without objection.

I.  STATEMENT OF FACTS

The subject property, identified as tax lot 3226-01700 and Account 65636, is comprised

of 18.6 acres of forested land in Newberg, Oregon.  (Stip Facts at 1, ¶ 1-2.)  In 2005, former

owners of the subject property applied for a zone change from Exclusive Farm Use (EF-80) to

Agriculture/Forestry Small Holding (AF-10), arguing that the property was nonresource land.

(Ex B at 1; Ex Q at 2.)  On September 5, 2007, the Yamhill County Board of Commissioners

(Board) enacted Ordinance 814, which approved the request and agreed to designate the property

as nonresource land.  (Ex B at 10; Ex Q at 2.)  As a result of such designation, the Board also

determined it necessary to disqualify the property from special assessment and "require[d] permanent loss of farm and forest deferral." (*Id*. at 10.)

At trial, Yamhill County Planning Director, Friday testified that the subject property could have been rezoned using one of two methods. First, the Board could have rezoned the property by creating an exception to relevant statewide planning goals. Second, the Board could have rezoned the property by designating it as nonresource land, which it did. Friday testified that the second method is so rare, to his estimation, only four or five properties in Yamhill County are designated as nonresource land. When asked why the subject property had to be rezoned by the method which it was, Friday testified that this unusual method was used to avoid potential community opposition.

On November 16, 2007, by letter, the Yamhill County Planning Director approved the subject property for a partition, subject to several conditions. (Ex C at 1.) One condition, required that the subject property "not be enrolled in special assessment in the future." (*Id*.) While the then Yamhill County Assessor, Dave Lawson (Lawson), had been copied on the approval letter, the Assessor's Office ultimately misplaced the letter, rather than placing it in the subject property's file, as best practice would have been to do. (*See id*. at 2.) On July 31, 2008, Lawson sent a letter notifying a company owned by the former owners of the subject property that the property had been disqualified from special assessment because of "insufficient stocking and zone change." (Ex D at 3.)

On December 23, 2011, Ladd Hill Development LLC (Ladd Hill) purchased the subject property. On October 2, 2015, Yamhill County foreclosed on the property for nonpayment of taxes. (Ex E at 6.) The following month, Ladd Hill listed the property for sale. After the

///

property sat on the market for approximately six months, Ladd Hill applied to Defendant for forestland designation to qualify for special assessment pursuant to ORS 321.358. (*See* Ex F.)

Aker, employed as an Appraiser II by Defendant, was assigned to work on the application for special assessment. Aker testified that she took numerous steps to verify that the subject property qualified as forestland, including reviewing an aerial photograph to verify that there were trees on the property, and checking the property class code (PCA) in the Assessor's Office computer system. Aker further testified that, generally, if a property had been permanently disqualified from special assessment, it would have had a PCA of seven in the computer system. Thus, in accordance with Ordinance 814, the subject property should have been marked with a number seven. However, Aker testified that she was unaware of the ordinance at the time, so she checked the PCA in the system, and she did not observe a PCA of seven. Aker approved Ladd Hill's application for special assessment on February 19, 2016. (*See* Ex G.)

In 2016, Plaintiff and his partner, Mattson, were in search of a property to build a home on. Mattson testified that when the couple learned of the subject property, they contacted the Assessor's Office to inquire about the status of the property. Mattson testified that, at first, she called the Assessor's Office and spoke with Aker on the phone, making it clear that she and Plaintiff were interested in purchasing the property, depending on its tax and deferral status. Aker confirmed at trial that she was aware that the information Mattson was inquiring into would impact whether Plaintiff would purchase the property. Mattson testified that she and Aker soon began exchanging emails, so that Mattson could have documentation.

On March 21, 2016, Aker emailed Mattson, stating that the property had "just been put back into forest deferral" and "[t]he stocking of trees must be increased so that the bare land is not removed from forest deferral in later years." (Ex 6 at 4.) Mattson testified that rather than

only contacting the Assessor's Office, she also contacted the county planning department, building department, and surveyor's office to confirm the status of the property. Each of which, according to Mattson, confirmed what Aker had emailed Mattson. On March 22, 2016, Mattson received an email from Aker again confirming the property's tax deferral status. (*See* Ex 6 at 2.) Accordingly, Plaintiff entered into a purchase agreement for the subject property the same day. (Stip Facts at 2, ¶ 12.) On May 6, 2016, the couple received a report from First American, a title insurance company, about the subject property. (*See* Ex 9.) The report did not contain information about Ordinance 814, as it had never been recorded against the property. (*Id*.) On June 8, 2016, a Statutory Warranty Deed from Ladd Hill to Mattson was recorded in the Yamhill County Official Records. (Stip Facts at 2, ¶ 13.)

In 2017, Plaintiff and Mattson started building a home on the property. (Stip Facts at 2, ¶ 18.) Plaintiff testified that to pay for the home, he took out a loan contingent on the deferral status of the property. To be able to build a residence on the property, a one-acre homesite was required to be disqualified from special assessment. On April 26, 2019, Wharff approved Mattson's application to disqualify one acre of the property from special assessment. (Ex 13 at 1-2.) Construction of the home completed in 2019. (Stip Facts at 2, ¶ 18.) Around this same time period, Plaintiff spent upwards of $10,000 purchasing forestry equipment and tree saplings to manage the property and to meet the forestland restocking requirements.

In April 2021, the Yamhill County Planning Department discovered that the subject property had been miscoded in the system and did not qualify for special assessment. (*See* Ex Q at 1-3.) Wharff emailed Friday stating, "[i]t appears that in 2008 we should have coded this as permanently disqualified. That did not happen. The property was place[d] back in deferral in 2016. * * *. There will be a potential additional tax lien added to the property for 2021-2022."

(*Id*. at 1-2.) Accordingly, on May 6, 2021, Wharff sent a letter informing Plaintiff that: (1) the land never qualified for special assessment because the Board had approved a previous owner's request to designate it as nonresource land; (2) the previous nonresource designation was approved on the condition that the property could no longer be placed in forest deferral; (3) the property was prohibited from requalifying for special assessment; and (4) the potential additional tax due was $24,974.34. (Ex R at 1-2.) Plaintiff timely appealed.

## II. ANALYSIS

The legislature determined long ago that, as a matter of public policy, the state should encourage the maintenance and protection of forestlands by granting special assessment. *See* ORS 321.262.[1] Once land has been designated as forestland, it will continue to be valued as such, unless the assessor removes the designation. ORS 321.359(1)(a). The assessor will remove the designation if one of the four listed events occurs. *See* ORS 321.359(1)(b). For example, ORS 321.359(1)(b)(C) provides, "[t]he county assessor shall remove the forestland designation upon: * * * [d]iscovery by the assessor that the land is no longer forestland[.]" Following disqualification, "an additional tax shall be added to the tax extended against the land on the next assessment and tax roll[.]" ORS 308A.703(1)(c), (2).

The issues presented are: (1) whether Defendant should be estopped from permanently disqualifying the subject property from special assessment and (2) whether applying estoppel, even if all elements are met, would violate the home-rule provisions of the Oregon Constitution.

/ / /

/ / /

---

[1] The court's references to the Oregon Revised Statutes (ORS) are to the 2019 edition, unless otherwise indicated.

A.    *Estoppel*

Although rarely applied, the Oregon judiciary has long recognized the doctrine of quasi estoppel (or equitable estoppel) in tax cases.  *See Portland Adventist Hosp. v. Dept. of Rev.*, 8 OTR 381, 386-87 (1980).  Generally, the doctrine is only applied in cases against the government when the alternative poses a risk of gross inequity.  *See Johnson v. State Tax Comm'n*, 2 OTR 504, 506 (1967), *aff'd*, 248 Or 460, 435 P2d 302 (1967).  The policy supporting such rare application is the efficient and effective collection of tax.  *Portland Adventist Hosp.*, 8 OTR at 387.

In order to succeed on a claim of estoppel, taxpayer must prove three elements: "(1) misleading conduct on the part of the defendant(s); (2) taxpayer's good faith reliance on that conduct; and (3) injury to taxpayer."  *Hoyt Street Properties LLC v. Dept. of Rev.*, 18 OTR 313, 318 (2005) (citations omitted).  In prior cases, litigants have argued that a fourth element is required: that the misleading conduct be completed with the intent of inducing the taxpayer's reliance.  *See Webb v. Dept. of Rev.*, 18 OTR 381, 388 n 2 (2005).  However, this element was disregarded by the Oregon Supreme Court and may explain the use of the term "quasi estoppel." *Cascade Manor, Inc. v. Dept. of Rev.*, 5 OTR 482, 488 (1974).

Additionally, a taxpayer cannot use estoppel for a benefit to which the law does not provide.  *See Bailey v. Josephine County Assessor*, TC-MD 200321N, WL 1884930 at *5 (Or Tax M Div, May 11, 2021).  In *Bailey*, the taxpayer's property, which was statutorily ineligible for forestland special assessment due to a non-farm dwelling on the property, was mistakenly granted forestland special assessment because it was miscoded in the system.  *Id*. at *1.  The court held that the taxpayer "did not suffer the type of injury contemplated by estoppel in the context of property tax. * * *.  [The taxpayer] was not deprived of a tax benefit that she was

otherwise due because of Defendant's misleading conduct. Rather, [the taxpayer] received a tax benefit—special assessment—for many years when the subject property did not in fact qualify." *Id*. at *5.

Both Plaintiff and Defendant cite to an Oregon Court of Appeals case, in which the court granted estoppel because the Employment Division misled an employer to believe that if they participated in the Shared Work Plans Law, the business would qualify for a lower tax rate that, as a matter of law, it was not entitled to. *Emp't Div. v. Western Graphics Corp.*, 76 Or App 608, 710 P2d 788 (1985). While both parties cite to *Western Graphics*, the case at hand differs from both *Bailey* and *Western Graphics* because in this case, nothing bars the subject property, as a matter of state law, from qualifying for forestland special assessment. Here, Plaintiff does not seek to use estoppel for a benefit to which the law does not provide.

Regarding the first element of estoppel, in *Johnson v. State Tax Commission*, the Oregon Supreme Court stated that estoppel "could only be applied when there is proof positive that the collector has misinformed the individual taxpayer." *Johnson*, 248 Or at 463. "[T]his court has found such proof in incorrect or misleading documents sent by taxing authorities to the taxpayer." *Webb*, 18 OTR at 384. "[T]here are few cases in which an Oregon court has considered oral communication to constitute a part of proof positive." *Pippenger v. Lane Cty. Assessor*, TC-MD 100141D, WL 3264283 at *3 (Or Tax M Div, Aug 19, 2010) (citations omitted). To meet the proof positive standard for oral communications, the taxpayer must provide "detailed memoranda that are written contemporaneously with the communications and that corroborate the taxpayer's recollection of them" or describe "the communications in great detail, including the nature, date, and time of each conversation; the names and relationships to the parties of all those who took part in each conversation; those persons' knowledge of

taxpayer's situation and of the relevant law; and the exact statements made as well as their form and intended meaning." *Webb v. Dept. of Rev.*, 19 OTR 20, 26 (2006). "Mere testimony that the government orally misguided the taxpayer, is generally, by itself, insufficient." *Schellin v. Dept. of Rev.*, 15 OTR 125, 131 (2000).

Plaintiff argues that he and his partner were misled by both written documentation and oral communications from Defendant. In its pre-trial brief, Defendant "freely admits that the Assessor's office erred in requalifying the subject property for forestland special assessment and in giving advice that restocking a bare area on the subject property with trees was necessary to maintain the special assessment for that area." Even if Defendant had not conceded to such misleading conduct, the first element would be met. On multiple occasions, Defendant sent emails to Plaintiff and his partner either directly stating that the property was "just put back into forest deferral" or stating that the property was in deferral. Such emails were undeniably misleading to the taxpayer and satisfy the proof positive standard. The court finds it unnecessary to further determine whether statements made by Defendant over the phone to Plaintiff satisfy the proof positive standard.

Second, estoppel requires reasonable reliance (in good faith) on the asserted misleading conduct. *Webb*, 18 OTR at 385. Defendant disputes this element, stating Plaintiff will have to prove whether he was entitled to rely on the special assessment designation and the information provided by the Assessor's office. Whether Plaintiff was *entitled* to rely on anything is not the applicable question. The question is whether Plaintiff relied in good faith on Defendant's misleading communications to Plaintiff, particularly Defendant's written statements indicating that the property was in deferral, as discussed above.

/ / /

In *Schellin*, the taxpayer was sent an ambiguous document from the assessor, which, "although technically correct, was capable of producing more than one reasonable interpretation." *Schellin*, 15 OTR at 135. The court held that reasonable reliance was satisfied because one of such interpretations did mislead the taxpayer. *Id*. Unlike *Schellin*, the emails at hand were only capable of producing one reasonable interpretation: that the property was in deferral and was therefore eligible for special assessment. Had Plaintiff purchased the property on this basis alone, the threshold for reasonable reliance would already be satisfied. However, Plaintiff and his partner continued to do their due diligence by contacting the county planning department, building department, the surveyor's office, and by inquiring with a title insurance company to confirm what they had been told by Defendant before purchasing the property. Not one of those third parties contradicted the information provided by Defendant. Thus, Plaintiff reasonably relied on Defendant's representations.

Moreover, Plaintiff reasonably relied on Defendant's representations because the property was rezoned by the highly unusual method of designating it as nonresource land. To the county's own admission, in almost all cases, property is rezoned by creating an exception to statewide planning goals. Typical cases of rezoning do not result in the enactment of an ordinance such as this case did. The county itself was unable to locate the ordinance disqualifying the property before making statements indicating that the property was in deferral. The court rejects the implication that while the county itself was unable to locate the ordinance, it would also be unreasonable for Plaintiff to fail to locate the ordinance.

The final element, injury, is clearly satisfied. Not only did Plaintiff and Mattson testify that Plaintiff would not have purchased the property if not for being misled regarding its tax and deferral status, but Plaintiff also would not have obtained the loan that he did, and he would not

have purchased equipment and saplings for the property. Plaintiff has sufficiently demonstrated that he reasonably relied on Defendant's misleading information, to his detriment.

B.        *Local Government Home-Rule Authority*

Defendant argues that even if all elements of estoppel are satisfied, estoppel cannot be granted because to do so would effectively overrule Ordinance 814, a local law protected from such interference by the home-rule provisions of the Oregon Constitution. *See* Or. Const., Art. IV, §1(5); Art. XI, §2. The first provision, Article XI, section two, "grants the voters of every city and town the authority to enact and amend their own municipal charter, and bars the legislature from enacting, amending or repealing any city charter." *City of Portland v. Bartlett*, 369 Or 606, 623, 503 P3d 99 (2022) (internal quotations omitted). The second provision, Article Four, subsection 1(5), "by its text, reserves the initiative and referendum powers to the voters of each municipality as to all local, special and municipal legislation of every character in or for their municipality or district." *Id*. In *Bartlett*, the court explained that the measures were created with the intention that "the voters of municipalities be permitted to determine the structure and organization of their own municipal governments[,]" but not "to oust the state legislature from making substantive law affecting cities and towns." *Id.* at 624 (internal quotations and citations omitted).

In *Bartlett*, the city argued that a law, if interpreted to require disclosure of certain public records notwithstanding the attorney-client privilege and applied to local governments, would violate local government home-rule authority. *Bartlett*, 369 Or at 623. The court held that, as to the first home-rule provision, the law had no effect on the "structure and organization" of the city's government, and therefore did not interfere with the voters' authority protected by the first provision. *Id*. at 625. As to the second provision, the court held that the law was substantive and

that "[s]tate and local substantive laws can and do operate concurrently, but, when they are in conflict, the state law will displace the local law." *Id*. (internal quotations and citation omitted). The court rejected the city's argument. *Id*. at 626.

Here, Ordinance 814 approved a zoning change and disqualified the subject property from special assessment. While Ordinance 814 is county law and is afforded some protection from the home-rule provisions, like in *Bartlett*, the law here has no effect on the structure and organization of the local government, and therefore is granted no protection from the first home-rule provision. Further, Ordinance 814 is substantive like that in *Bartlett*, meaning that if the ordinance conflicts with state law, the state law will displace the ordinance.

In *Angel v. Department of Revenue*, 21 OTR 444 (2014), a taxpayer filed suit after his property was disqualified from forestland special assessment because of restrictions associated with the City of Portland's zoning overlay on his property. In accordance with ORS 321.257(2), which provides that land can be designated as forestland if held for the predominant purpose of harvesting timber, plaintiff argued that his land was held for such predominant purpose. *Id*. at 448. Defendant argued that because of the administrative hurdles imposed by the zoning overlay on the property, it was, in practice, impossible to hold the property for the predominant purpose of harvesting timber. *Id*. at 450. The court rejected the county's argument for lack of evidence, essentially holding that a zoning change does not bar a property from special assessment. *Id*.

Like the local zoning overlay in *Angel*, the zoning change permitted by Ordinance 814 did not permanently bar the subject property from special assessment because state law regarding the basis for a county to disqualify a property from forestland special assessment supersedes Defendant's ordinance. Therefore, estoppel is not barred by home-rule local government authority.

## III. CONCLUSION

Upon careful consideration, the court concludes that Defendant is estopped from disqualifying the subject property from forestland special assessment and from imposing additional back taxes. The court further concludes that the home-rule provisions of the Oregon Constitution do not prevent application of estoppel. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is granted. Defendant is estopped from disqualifying the subject property from forestland special assessment.

Dated this _____ day of September 2022.


_____
RICHARD DAVIS
MAGISTRATE

*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by __mailing__ to: 1163 State Street, Salem, OR 97301-2563; or by __hand delivery__ to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within __60__ days after the date of this Decision or this Decision cannot be changed. TCR-MD 19 B.*

*This document was signed by Magistrate Richard Davis and entered on September 30, 2022.*